## UNITED STATES *v.* GAUSSEN.

1. Under the act of March 3d, 1797, enacting that in suits against delinquent revenue officers, "a transcript *from* the books and proceedings of the treasury shall be evidence," it is not necessary that every account with any individual and all of every account, should be transcribed    An extract may be given in evidence if not garbled or mutilated—that is to say, an extract wherein credits are not suppressed, and which does not confine itself to·results, or balances without details, but which is complete in itself—perfect for what it purports to represent—and which gives both sides of the account as it stands upon the books of the treasury.

2. The court, however, states that "it is not authorized to regulate the manner in which the departments shall keep their books, or to prescribe the minuteness of detail," and that the statements and details of daily business made by a collector are necessarily condensed when carried to a ledger account, and the results of many items stated in a briefer form than that in which they stood on the original entries.    And it confines itself to saying that certain particular transcripts, all much alike, offered in the case, and one of which is given by the Reporter at large as an illustration of the whole, were sufficiently minute.

3. The said act of March 3d, 1797, proceeds upon the theory that the officers of the Government shall make up the account of every revenue officer, that it shall adjust the same on its books, and that the account thus stated and adjusted shall stand as and for the sum for which such officer shall be liable to it.    The statement is *prima facie* evidence only.

.A transcript of the accounts rendered·by a collector himself (when not partial or fragmentary), is evidence against the surety on his official bond.

ERROR to the Circuit Court for the District of Louisiana: the case being thus:

An act of March 3d, 1797,\* enacts:

"SECTION 1. That when any revenue officer . . . shall neglect or refuse to pay into the treasury the sum or balance reported to be due to the United States upon the adjustment of his ac-

---

\* 1 Stat. at Large, 512.

counts, it shall be the duty of the comptroller to institute suit for the recovery of the same, adding to the sum stated to be due, on such account, the commissions of the delinquent, which shall be forfeited in every instance where suit is commenced and judgment obtained.

"SECTION 2. That in every case of delinquency, where a suit has been or shall be instituted, a transcript *from* the books and proceedings of the treasury, certified by the register and authenticated under the seal of the department, shall be admitted as evidence, and the court trying the cause shall be thereupon au- thorized to grant judgment and award execution accordingly.

"SECTION 4. That in suits between the United States and in- dividuals, no claim for a credit shall be admitted upon trial but such as shall appear to have been presented to the accounting officers of the treasury for their examination, and by them dis- allowed."

This act being in force, the United States sued Gaussen, executor of Elgee, in the court below, on a bond given in 1845, by Thomas Barrett, as collector of the customs at the port of New Orleans, in which bond Elgee was a surety. The declaration filed by the government referred to a tran- script, which was annexed to and made part of it, from the books of the treasury, containing eight certain quarterly reports, numbered 5688, &c., of the first auditor, upon the quarterly accounts of Barrett, as admitted and certified by the comptroller and commissioner of customs, and "state- ments of differences" thereon; and *also* copies of quarterly accounts current rendered by Barrett, the collector, himself. Each class of things covered the whole term that Barrett was in office.

The report of the first auditor and the statement of differ- ences thereon were, as respected the report numbered 5688, in this form; the reports bearing the other numbers being in form very similar:

[No. 5688.]                    "TREASURY DEPARTMENT,
                    FIRST AUDITOR'S OFFICE, June 20th, 1845.

"I have examined and adjusted the accounts of Thomas Bar- rett, collector of the customs for the district of New Orleans,

State of Louisiana, under his bond, dated July 6th, 1844, commencing on the 25th day of July, and ending on the 30th day of September, 1844, and find that he is chargeable with the following sums, viz.:

| | | | |
|---|---|---|---|
| To duties on merchandise to September 30th, 1844, | | $168,645 76 | |
| duties on railroad iron imported in 1836, but the duties not credited by the collector at that time, | | 2,502 24 | |
| | | | $171,148 00 |
| To duties on tonnage, to September 30th, 1844, | | | 171 75 |
| light money collected, " " | | | 174 37 |
| marine hospital money collected, to September 30th, 1844, | | 549 55 | |
| Deduct commissions thereon, at one per cent., | | 5 50 | |
| | | | 544 05 |
| interest received on goods in store, to September 30th, 1844, | | 85 30 | |
| interest received on bonds for duties on railroad iron, | | 662 44 | |
| | | | 747 74 |
| amount received for fines, penalties, forfeitures, on account of Thomas Gibbes Morgan, late collector, collected and retained by him and placed to the credit of the United States, in account now stated, and for which said Morgan will receive credit, | | | 16 21 |
| | | | $172,802 12 |

## "I also find that he is entitled to the following credit, viz.:

| | | |
|---|---|---|
| By payments to inspectors, &c., to September 30th, 1844, | | $18 844 81 |
| contingent expenses paid, " " " | | 783 46 |
| disbursements for the revenue cutter Woodbury, to September 30th, 1844, | | 3,956 97 |
| " " " " Vigilant, " " | | 48 00 |
| " " " boats, " " | | 840 00 |
| " in relation to appraisements, " " | | 1,177 62 |
| balance of public store account, " " | | 716 25 |
| debentures paid on merchandise exported, " " | | 15,994 45 |
| fines, &c., costs of suits, " " | | 542 19 |
| duties on merchandise refunded to correct errors, " " | | 672 15 |
| duties on tonnage refunded to correct errors, " " | | 101 33 |
| amount paid for extra clerk hire in the office of the naval officer, | | 368 00 |
| amount paid George Royster, collector of Têche, per order of the comptroller of the treasury, dated July 23d, 1844, and with which said Royster has been debited, per report No. 5387, | | 200 00 |
| amount paid Willis H. Arnold, collector of Pearl River, per order of the comptroller of the treasury, dated 7th August, 1844, and with which said Arnold has been debited, per report No. 5324, | | 75 24 |

| | | | |
|---|---|---|---|
| By three months' salary— | | | |
| To the naval officer, to September 30th, 1844, | | $62 50 | |
| " surveyor of New Orleans, to September 30th, 1844, | | 62 50 | |
| " surveyor of Bayou St. John, " " | | 62 50 | |
| " surveyor of Port Pontchartrain, " " | | 62 50 | |
| " surveyor of Madisonville, " " | | 62 50 | |
| By three months and 17 days' salary to the surveyor of Lafayette, from 14th June to 30th September, 1844, at $250 per annum, | | 74 17 | |
| | | | 386 67 |
| amount of warrant No. 3152, in favor of the treasurer, dated September 30th, 1844, | | | 83,164 68 |
| commissions on $127,816.22 at one per cent., | | | 1,278 16 |
| And that the balance due to the United States on the 1st day of October, 1844, amounted to, | | | 43,652 16 |
| | | | $172,802 12 |

" As appears from the statement and accounts herewith transmitted for the decision of the comptroller of the treasury thereon.

(Signed)　　　　" WILLIAM COLLINS,

" First Auditor.

" To JAMES W. McCULLOH, ESQ ,
　　　First Comptroller of the Treasury."

Auditor's balance is, . . . . . . . . . . . . . . . $43,652 16
Add this sum, amount of difference, to the debit of the collector, as per corrected statement, . . . . . . . . . . . . . . 10 40

　　Balance due to the United States,. . . . . . . . . $43,662 56

" COMPTROLLER'S OFFICE.

" Admitted and certified to the above as corrected 7th day of August, 1845.

(Signed)　　　　"J. W. McCULLOH,

Comptroller.

" R. H. GILLETT, ESQ.,
　　　Register of the Treasury."

*Thomas Barrett, under his bond, dated July 6th, 1844, in account with the United States.*

### DR.

To duties on merchandise, to September 30th, 1844, . . . . $168,645 76
　duties on railroad iron imported in 1836, but the duties not credited by the collector at that time, . . . . . . . 2,502 24
　　　　　　　　　　　　　　　　　　　　　　　　$171,148 00
　duties on tonnage, to September 30th, 1844, . . . . . 171 75
　light money collected,　　"　　　" . . . . . 174 37
　marine hospital money collected, . . . . . . . 549 55
　Deduct commission thereon, at one per cent., . . . . 5 50
　　　　　　　　　　　　　　　　　　　　　　　544 05
　interest received on goods in store, to September 30th, 1844, . . 85 30
　interest received on bonds for duties on railroad iron, . . 662 44
　　　　　　　　　　　　　　　　　　　　　　　747 74
　amount received for fines, penalties, and forfeitures on account of Thomas Gibbes Morgan, late collector, collected and retained by him and placed to the credit of the United States, in account now stated, and for which said Morgan will receive credit, . 16 21

　　　　　　　　　　　　　　　　　　　　　　$172,802 12

### CR.

By payments to inspectors, &c., to September 30th, 1844, . . . . . $18,844 81
　contingent expenses paid,　　"　　" . . . . . . 783 46
　disbursements for the revenue cutter Woodbury, to September 30th, 1844, . 3,956 97
　　"　　"　　"　　" Vigilant,　　"　　" . . 48 00
　　"　　"　　"　　boats,　　"　　" . . 840 00
　　"　　in relation to appraisements,　　"　　" . . 1,177 62
　balance of public store account,　　"　　" . . 716 25
　debentures paid on merchandise exported,　　"　　" . . 15,994 43
　fines, &c., costs of suits,　　"　　" . . 542 19
　duties on merchandise refunded to correct errors,　　"　　" . . 672 15

　　　　　　　　　　　　　　　　　　　　　　$43,575 88

Statement of the case.

| | | |
|---|---|---|
| Amount brought forward, . . . . . . . . . | . $43,575 88 | |
| To duties on tonnage refunded to correct errors, to September 30th, 1844, . . | 101 33 | |
| amount paid for extra clerk hire in office of the naval officer, . . . . | 368 00 | |
| amount paid George Royster, collector of Têche, per order of the comptroller of the treasury, dated July 25th, 1844, and with which said Royster has been debited, per report No. 5387, . . . . . . . . . | 200 00 | |
| amount paid Willis H. Arnold, collector of Pearl River, per order of the comptroller of the treasury, dated 7th August, 1844, and with which said Arnold has been debited, per report No. 5324, . . . . . . . . . | 75 24 | |

By three months' salary—

| | | |
|---|---|---|
| To the naval officer, to September 30th, 1844, . . . . . | $62 50 | |
| "   surveyor of New Orleans, to September 30th, 1844, . . . | 62 50 | |
| "   surveyor of Bayou St. John,  "    "  . . . | 62 50 | |
| "   surveyor of Port Ponchartrain,  "    "  . . . | 62 50 | |
| "   surveyor of Madisonville,    "    "  . . . | 62 50 | |

By three months and 17 days' salary to the surveyor of Lafayette, from

| | | |
|---|---|---|
| 14th June to 30th September, 1844, at $250 per annum, . . . | †63 87 | |
| | *64 17 | |
| | | †376 37 |
| | | *386 67 |
| amount of warrant No. 3152, in favor of the treasurer, dated September 30th, 1844, . . . . . . . . . . . . . . . . | . 83,164 68 | |
| commission on †$127,805.82 [*$127,816.22], at one per cent., . . . . | . †1,278 06 | |
| | *1,278 16 | |
| balance due the United States, . . . . . . . . . . | . †43,662 56 | |
| | *43,652 16 | |
| | | $172,802 12 |

"TREASURY DEPARTMENT,
FIRST AUDITOR'S OFFICE, June 19th, 1845.

"Examined and stated by—
                    (Signed)                    "J. COLGATE."
          "COMPTROLLER'S OFFICE, July 21st, 1845.
                    (Signed)          "J. BARTRAM WORTH."
W. A. W.
          [*Statement of Differences.*]

he balance due to the United States, per his account ending September 30th, 1844, $39,507 50
dd amount overcharged for payments to inspectors, &c., viz.:

| | | |
|---|---|---|
| Overpaid N. C. Snethen for making other articles than spirits, cordials, wines, &c. [†will be all'd on next qr. ac.] (red), . $653 70 | | |
| Overpaid S. Boyer, weigher, his fees for weigher, amt'g to $440.61, charged $951.62, . . . . . . . . 511 01 | $1,164 71 | |

dd amount erroneously charged to contingent expenses:

| | | |
|---|---|---|
| Amount paid J. Royalls, bell-keeper of new marine hospital, $75 00 | | |
| "   "   New Orleans Republican, advertising proposals for ditto, . . . . . . . 12 50 | | |
| "   "   J. H. Dakins, architect, bill of drawings for ditto, . . . . . . . . . 75 00 | | |
| "   "   Graham & Williams's bill, printing specifications of builder's work, . . . . . 40 00 | | |
| "   "   New Orleans Republican, advertising postponement of proposals, . . . . 11 00 | ‡213 50 | |
| | $1,378 21 | $39,507 50 |

---

* Erased.          † Interlined in red.          ‡ See *infra*, p. 207, note ‡.

Statement of the case.

| | | |
|---|---:|---:|
| Amount brought forward, . . . . . . . . . . . | . $1,378 21 | $39,507 50 |
| These bills are chargeable in account for building new marine hospital [†which is now being stated in the Auditor's Office], (red). | | |
| Add amount paid, two bills, New Orleans Republican, advertising unclaimed goods; must be paid out of { No. 7, | 700 00 | |
| proceeds of sales, . . . . . . . . { " 11, | 580 00 | |
| | | ‡1,280 00 |
| Add amount paid D. W. Noble's bill, subscription to daily New Orleans Herald, . . . . . . . | 5 00 | |
| Add amount paid J. Beardue's bill, subscription to N. O. Cornell, Bulletin, . . . . . . . . . . | 12 00 | |
| | | ‡17 00 |
| [†Payable out of official emol'ts], (red). | | |
| Add amount paid Whiting & Shimmerhorn's bill, carriage hire, chargeable to lighthouse account, . . . . . . . . | | ‡7 50 |
| Add amount charged for payment to G. W. Lewis, as inspector at Natchitoches; a bill receipted by Lewis himself, accompanied with the usual affidavit, is required, . . . . . . . | | ‡822 00 |
| Add amount paid R. Coudon's bill, keeping a horse for the captain of night watch, disallowed, . . . . . . . . . | | ‡15 00 |
| Add amount of Bailie Peyton's (dist. att'y) bill of fees, No. 5, | $459 00 | |
| And his bill of fees, No. 17; judge's certificate of probable cause wanted, . . . . . . . . | 255 00 | |
| | | ‡714 00 |
| Add amount overpaid D. Clark, surveyor of Lafayette, from 29th [*appointed 14th] June, 1844, date of oath, to 30th September, 1844, is three months and [*seventeen] two days, at $250 per annum, . | †‡170 13 | |
| | *159 83 | |
| Add amount overcharged for disbursements for revenue cutter Woodbury, viz.: | | |
| amount paid Joseph Dyer's bill, for meat and vegetables, &c., disallowed, . . . . . . . . | 26 28 | |
| amount paid Hitchcocks & Brothers' bill, for beef, bread, groceries, &c., disallowed, . . . . . . . | 104 71 | |
| amount paid P. Gernon's bill, for arresting deserters, disallowed, . . . . . . . . . . | 50 00 | |
| amount paid J. D. Usher, third lieutenant, for month of September, and also ent'd in pay-roll for September, and charged in account for fourth quarter, 1844, . . . | 65 63 | |
| amount charged per order of Captain Foster, in favor of Noel Barrett; not receipted, . . . . . . | 20 00 | |
| | | 266 62 |
| Add amount charged for payment to deputy collector of Natchitoches; payable [*out of official emoluments]. Revenue, as per order of secretary, 10th September, 1844, and will be allowed in next acc't, | | 680 00 |
| Add amount overcharged to public store account, viz.: | | |
| amount overpaid W. H. Wilder, storekeeper, from 25th July to 30th September, 1844. (Authority wanted for increase of pay), . . . . . . . . . | ‡74 23 | |
| amount of extra pay to J. E. Quere, late storekeeper, disallowed, . . . . . . . . . . | 113 66 | |
| amount of extra pay to E. Wiltz, deputy storekeeper, disallowed, . . . . . . . . . . | 93 00 | |
| amount overpaid E. Wiltz, deputy storekeeper, for third quarter, 1844, . . . . . . . . . | 92 00 | |
| Add subscription to Louisiana Courier, disallowed, . . | 12 00 | |
| | | 384 89 |
| | | $5,685 35 $39,507 50 |

* Erased.　† Interlined in red.　‡ See *infra*, p. 207, note ‡.

Statement of the case.

| | | |
|---|---:|---:|
| Amount brought forward, . . . . . . . . . | . $5,685 35 | $39,507 50 |
| Add amount charged for treasury note and interest; will be brought to his credit in the next statement of his account, . . . . | 565 71 | |
| Add commissions overcharged in this account now stated, . . . | †31 28 | |
| | *31 19 | |
| | | †6,282 34 |
| | | *6,271 94 |
| | | *45,779 32 |
| | | †45,789 92 |
| Deduct amount credited for moneys received on account of G. Dorsey, late collector (must be settled between them),. . . . . . | $51 08 | |
| Deduct amount erroneously credited, in account now stated, for deposits to secure duties, . . . . . . . . . . | 2,076 28 | |
| | | 2,127 36 |
| | | †$43,662 56 |
| | | *43,652 16 |

The quarterly account rendered by Barrett, during the quarter to which the above copied report and statement of differences applied, was in this form, the other quarterly accounts being essentially like it:

*The United States in account current with Thomas Barrett, collector of the customs for the district of New Orleans, from the 25th of July to the 30th of September, 1844, in the third quarter of the year 1844.*

### DR.

| | | |
|---|---|---:|
| 1. To payments of debentures, . . . . . . . . . . | | . $15.994 43 |
| 2. " to inspector, weigher, measurer, marker, and gauger, . . | | . 20,009 52 |
| 3. " to revenue boats and boatmen, . . . . . . | | . 840 00 |
| 4. " *on account of contingent expenses,* . . . . . . | | . 4,394 65 |
| 5. " *payments* to clerks in the naval office, . . . . | | . 368 00 |
| 6. " naval officer and surveyors, for salary, . . . . | | . 546 50 |
| 7. " *payment* on account United States revenue cutter Woodbury, | | . 4,223 59 |
| 8. " on account of appraiser's office, . . . . . . | | . 1,177 62 |
| 9. To amount refunded to correct errors in duties on merchandise, . . | | . 773 48 |
| 10. To payment to deputy collector, Natchitoches, . . . . | | . 630 00 |
| 11. " to collector at Têche, . . . . . . . | | . 200 00 |
| 12. " to collector at Shieldsborough, . . . . . . | | . 75 24 |
| 13. " on account United States schooner Vigilant, . . . | | . 48 00 |
| 14. " on account of public stores, . . . . . . | | . 1,101 14 |
| To balance, . . . . . . . . . . . . | | . 121,382 63 |
| | | $171,764 80 |

### CR.

| | | |
|---|---:|---:|
| By amount of duties on goods imported this quarter: | | |
| In vessels of the United States, . . . . . . | . $152,252 90 | |
| " foreign equalized, . . . . . . . | 14,156 10 | |
| " other foreign, . . . . . . . | 462 23 | |
| On inland importations, . . . . . . . . | 1,774 53 | |
| | $168,645 76 | |
| A. Less this amount unsettled entries, belonging to this quarter, the deposits on which appear below, . . . . . . | 6,896 72 | $161,749 04 |

---

* Erased.　　　　　　　　　　　† Interlined in red.

| | |
|---|---:|
| Amount brought forward, . . . . . . . . . . | $161,749 64 |
| By amount of deposits above mentioned, made to secure duties on entries belonging to this quarter, . . . . . . . . . . . . | 8,973 00 |
| By amount of duties on tonnage, . . . . . . . . $185 55 | |
| B. By amount of light money, . . . . . . . . . 160 57 | |
| | 346 12 |
| By amount of marine hospital dues, . . . . . . . $549 55 | |
| C. Less commission, one per cent., . . . . . . . . 5 50 | |
| | 544 05 |
| D. By amount of interest received, . . . . . . . . . | 85 30 |
| E. By amount received on account of G. Dorsey, late collector, . . . . | 51 08 |
| F. By amount on account fines, forfeitures, and penalties, this sum unpaid and due to T. G. Morgan, late collector, . . . . . . . . . | 16 21 |
| | $171,764 80 |

### *Treasurer of the United States.*

#### DR.

| | |
|---|---:|
| To remittances, as follows: | |
| Treasury notes and interest cancelled and returned to Secretary of Treasury, . | $565 61 |
| In certificates of deposits in Bank of Louisiana, . . . . . . . | 80,000 00 |
| To commissions on remittances and payments to officer of the customs, &c., $129,624 85, . . . . . . . . . . . . . . . . | 1,309 34 |
| To balance, . . . . . . . . . . . . . . . | 39,507 58 |
| | $121,382 63 |

#### CR.

| | |
|---|---:|
| By balance brought down from above account, . . . . . . . . | $121,382 63 |
| | $121,382 63 |
| By balance brought down, . . . . . . . . . . . . | $39,507 58 |

THOMAS BARRETT,
Collector.

COLLECTOR'S OFFICE,
NEW ORLEANS, 30th September, 1844.

Indorsed: "The United States in account current with Thomas Barrett, from 25th July to 30th September, 1844.          E."

In one of the reports of the auditor there was an entry thus:

"I also find that he is entitled TO CREDIT, as follows, by amount of the following sums:

*Balance* of his account of official emoluments from 1st July, 1844, to 12th October, 1845, as per report No. 6771, . . . . . . . . . . . . . $16,529 75"

There was no report No. 6771 in evidence.

The whole of these records (that is to say, reports of the first auditor, the statement of differences, and the quarterly accounts current of Barrett himself), were attached together and certified by one certificate of the register and

by one impression of the seal of the treasury, to be true copies of the said reports of the first auditor, of the said statement of differences, and of the said quarterly accounts current of Barrett.

On the trial the government offered as evidence the copies of the reports of the First Auditor, numbered respectively 5688, &c., and also of the statements of differences thereon, " all of said papers," said the bill of exceptions, " being fastened together as a whole and embraced in one certificate; all of which more fully and at large appears by the said transcript of said report and adjustment of account filed in this cause with the plaintiff's petition therein."

The defendant, " while making no objection to the form or substance of the certificate by which the authenticity of such transcript was attested," objected to the same on the grounds—

"That the act of the 3d of March, 1797, which makes transcripts from the books and proceedings of the treasury evidence, only applies to public defaulters in terms, and, being in derogation of common right and penal in its character, cannot be extended by construction so as to make such transcripts evidence against the sureties of such defaulters or the legal representatives of deceased sureties.

"That the said reports, which, together with the quarterly returns, constituted an entire document (said reports and returns being fastened together and authenticated by one and the same certificate), were fragmentary, incomplete, and partial.

" That the reports and statements of differences charged Barrett with gross sums and balances without any detail or exhibition of the items of which they were composed, as, for instance, in report No. 5688, a gross sum of $2502.24 is charged against him for 'duties on railroad iron imported in 1836, and not credited by the collector at the time.'*

"That it disallowed gross sums, and subtracted gross sums on and from the credit side of Barrett's account without any detail or specification of the items disallowed. That, *ex gr.*, by comparing quarterly return for the third quarter of 1844 with

---

* See *supra*, p. 200, seventh and eighth lines from top, in Italics.—REP.

report No. 5688 and the statement of differences, it will appear that Barrett claimed credit for $4394.65 for contingent expenses * He was allowed only $783.46† in the report, $3611.19 being disallowed, but the detail of the items disallowed, as appeared by the statement of differences, amounts to only $3239.13,‡ and there is no detail or specification of the balance of the $3611.19 disallowed, nor is there any information or explanation in the transcript of what composes that balance, or why it was disallowed.

"And further, that the said reports and statements of differences did not contain or exhibit the accounts as they were presented to and acted upon by the accounting officers of the department, nor their action nor their proceedings relative thereto."

The court held the objections good, and rejected the evidence.

The government afterwards offered in evidence certified copies of the several quarterly statements of accounts rendered by Barrett himself to the United States, "which said certified copies aforesaid were and are on file in the suit, having been filed with the petition and contained in the said document, marked and already made part of this bill of exceptions."

This evidence was objected to on the ground that the said statement was not legal proof of the existence of a debt by Barrett, did not tend to prove the same, and was not competent evidence thereof, and that the same were fragmentary and incomplete.   This evidence was excluded, and the plaintiff excepted to the ruling.

Verdict and judgment having gone for the defendant, the government brought the case here.

*Messrs. J. M. Carlisle and J. D. McPherson, in support of the ruling below:*

1. *The reports of the auditor and accompanying statements of*

---

* See p. 204, twenty-second line from bottom, in Italics.

† See *supra*, p. 200, about twenty-second line from top, in Italics.

‡ These figures, $3239.13, are the total of the items marked with a ‡ before them on p. 202 (at bottom) and 203.

*differences were not admissible in evidence separately from the quarterly returns.*

Not everything which a treasury officer chooses to write upon the books of the treasury thereby becomes evidence under the act of March 3d, 1797. Those matters of which the treasury officers have official knowledge, and which upon such knowledge they have recorded in the books of the treasury, thereby become evidence. But when those officers ascertain facts by evidence, that evidence becomes part of their proceedings, and their conclusions, apart from the evidence upon which they are founded, are not evidence.*

In the present case the auditor's reports contained debits of large sums received as duties upon imports by the collector at New Orleans—a matter of which the auditor had no official knowledge—and although annexed to the transcript containing those reports there were copies of the returns containing the evidence on which those debits were entered against the collector, the attorney for the plaintiff sought to introduce the auditor's reports without the said returns. When, for instance, the auditor, in settlement No. 5688, certified that he had examined the accounts of Thomas Barrett, collector, &c., and found he was chargeable with $168,645.76 duties on merchandise to September 30, and with $2502.24 "duties on railroad iron imported in 1836, but such duties not credited by the collector at that time," the accounts so examined, as well as the result of the examination, were part of the proceedings. The report of the auditor purports to find its facts in the accounts rendered by Barrett, and had it been admitted in evidence the defendant would have been put to proof that the duties accrued in 1836 had not been received by him within the period covered by the bond. Whereas, had the accounts themselves been put in evidence as part of the proceedings, it would have been found that no such amount was acknowledged therein, and that the "finding" of the first auditor was without any evidence to support it.

---

* United States *v.* Jones, 8 Peters, 375, 381.

With each report of the auditor is a "statement of differences," purporting to show in what particulars the amount stated by the auditor differs from that rendered by the collector. It begins by setting down "the balance due the United States per his account ending" at such date, and this balance is increased by the addition of such sums as the collector has taken credit for, but which the auditor has refused to allow. It is only by comparing this statement with the original account rendered that the matters of difference between the parties can be understood. And any paper which was passed upon by the auditor and is necessary to a correct understanding of the action of the auditor, is a part of the proceedings.

For example: In the report already cited, No. 5688, the collector is credited with contingent expenses $783.46,* and in the statement of differences it is stated that $3239.13† have been disallowed, thus accounting for $4022.59 as if it were the whole amount charged by the collector; but on looking at his account (on page 204), it is seen that he has charged for contingent expenses $4394.65, and the auditor has thus failed to consider and pass upon ($4394.65 less $4122.59) $372.06, either by allowance or disallowance.

This example, taken from the bill of exceptions, was brought to the notice of the court when the transcript was excluded.

2. *The quarterly returns were not admissible in evidence without the auditor's reports.*

The defendant is entitled to the benefit of all credits allowed by the accounting officers. But as credits claimed, if not admitted by the accounting officers, must be proven, then it follows that to admit the quarterly returns without the auditor's reports would be to deny the defendant the benefit of all credits given him at the treasury, and put him to proof of all the credits anew. This would have been

---

* *Supra*, p. 200, about twenty-second line from top, in Italics.

† These figures, $3239.13, as already said, are the total of the items marked with a ‡ on pp. 202 and 203.

a great hardship and one which no court would impose, especially if, as stated in the bill of exceptions, the reports thus omitted contained credits which do not appear in the quarterly returns, but do appear first in the settlements made after the collector's death, and which with other settlements the United States declined to offer with the quarterly returns.

3. *But if the plaintiff had offered in evidence the complete transcript of which they offered parts, it would not have been admissible.*

It is on its face fragmentary and imperfect, and it moreover contains items not within the scope of the liability of surety on whose bond the suit was brought. We assume that under the act of 1797, which alone makes such a transcript evidence, the transcript must contain, 1st, all the proceedings; 2d, a decision either of allowance or disallowance of all claims to credit, which have been submitted to the accounting officers; 3d, debits manifestly and clearly not within the scope of the account settled and adjusted.

Now in this case,

1. *The transcript was incomplete.*

In one of the settlements is a gross amount brought into the account as

"Balance of his account of official emoluments from 1st July, 1844, to 12th October, 1845, as per report No. 6771, $16,529.73."*

Such a transcript was rejected in *United States* v. *Paterson.*† A "balance" implies debits and credits, but the report No. 6771, in which they are contained, is not produced; and the transcript thus on its face is fragmentary and imperfect, and shows that there has been a settlement with the collector which is not contained in the transcript. It is unimportant that the unproduced settlement resulted in a credit. There are debits in it, as appears by the result being a "balance," and the mischief is the same whether debits be unjustly charged, or credits be unjustly withheld.

---

* See *supra*, p. 205, seventh line from bottom.      † 1 Gilpin, 44.

2. In the instance cited on p. 209, from report No. 5688, the collector had claimed credit for large disbursements on account of contingent expenses. Portions of these were allowed in gross, and other portions rejected, and still other portions are not specially either allowed or rejected.

The act of 1797 declares that no credit, not allowed by the accounting officer, shall be allowed on the trial, unless it has been presented to the accounting officer, " and *disallowed*," or has not been presented by reason of accident or absence from the United States. It results from this provision that the officer is entitled to the decision of the accounting officers on every item, and this court so ruled in *United States* v. *Jones.*\*

In these cases where the accounting officers have failed to account for more than a small part of the difference between the amount charged by the collector and that admitted by the auditor, it is manifest that, in order to obtain credit for the part rejected, the defendant must prove the whole, for as he cannot identify the part admitted, if he prove any amount less than the whole, the part already admitted will be deducted from it, and he will lose the balance.

3. There are debits in the transcript not within the scope of the liability sought to be enforced. One is seen in the report No. 5688, where there is a charge of duties on railroad iron imported in 1836, and as we understand the entry, paid in 1836, but " not credited by the collector at that time."

A transcript containing such an item is not admissible in evidence against a surety on a bond dated in 1844.

*Mr. C. H. Hill, Assistant Attorney-General, contra.*

Mr. Justice HUNT delivered the opinion of the court.

The act of March 3d, 1797, proceeds upon the theory that the officers of the United States shall make up the account

---

\* 8 Peters, 375, 382.

of every revenue officer, that it shall adjust the same on its books, and that the account thus stated and adjusted shall stand as and for the sum for which such officer shall be liable to the government. This no doubt is subject to correction by such competent evidence as may be produced. In other words, the statement is *primâ facie* evidence only, not absolute and conclusive.

In furtherance of this idea it is the duty of the comptroller at once to institute suit for the recovery of the balance thus found and stated. A second result, and one indispensable to the existence of the theory, is, that the books shall be evidence of the truth of the amounts thus stated and declared to be due to the United States. The act, therefore, provides that a transcript from these books and proceedings shall be admitted in evidence, and that, thereupon, the court is authorized to proceed to judgment and execution.

In the present case "copies of the report of the first auditor," numbered respectively 5688, &c., and eight in number, were offered in evidence. The bill of exceptions states that no objection was made to the manner in which they were certified.

The suggestion that the act is applicable to a defaulting principal, and not a surety, is not pressed and need not be considered.

The objection that the reports were fragmentary and incomplete is not sustained by the facts. As presented in the record each report is complete and perfect in itself. Each report contains all upon the subject during the time that it purports to represent. In the aggregate they cover the whole period of Barrett's service. The statute says that a transcript *from* the books shall be admitted as evidence. A transcript or a transcribing is substantially a copy. A copy from the books, and not of the books, shall be admissible in evidence. An extract from the books, a portion of the books, when authenticated to be a copy, may be given in evidence. While a garbled statement is not evidence, or a mutilated statement, wherein the debits shall be presented and the credits suppressed, or perhaps a statement of results

only, it still seems to be clear that it is not necessary that every account with an individual, and all of every account, shall be transcribed as a condition of the admissibility of any one account. The statement presented should be complete in itself, perfect for what it purports to represent, and give both sides of the account as the same stands upon the books.*

Nor is the objection that the reports charge Barrett with gross sums and with balances without giving details, sustained by the facts.

The reports are made up with much particularity, and give the items on each side of the account. It is not a case of a certificate of balances merely. We are not authorized, however, to regulate the manner in which the departments shall keep their books, or to prescribe the minuteness of the detail. The items in these reports are manifestly made up from statements and details of the daily business furnished by the collector. They are necessarily condensed when carried to a ledger account, and the results of many items or of some considerable period of time, may be stated in a briefer form than they stood upon the original entries. The means of particular information are open to either party. We see no objection on this ground to the evidence now presented, and are of the opinion that there was error in its exclusion.

There was error also in excluding the evidence of the accounts rendered by Barrett, the principal. They seem to be complete, not partial or fragmentary as alleged, and being statements made by him to the government in the performance of his official duty, they are evidence against the party making them not only, but his sureties as well, and against third persons in privity with him. The authorities place the rule upon the ground—1st, that the entries made are against the interest of the party making them; and 2dly, that a surety is bound by the acts and declarations of his

---

* Gratiot v. United States, 15 Peters, 356, 370; Hoyt v. United States, 10 Howard, 109, 132; United States v. Eckford, 1 Id. 250.

principal, being within the scope of the business, as a part of the *res gestæ.**

JUDGMENT REVERSED, AND A NEW TRIAL ORDERED.

---

* See 1 Phillips on Evidence, 4th Am. ed., p. 307, and note, also pp. 525, 526; Plaxton *v.* Dare, 10 Barnewall & Creswell, 17; Middleton *v.* Melton, 10 Id. 317.

