# FIDELITY & DEPOSIT CO. OF MARYLAND v. UNITED STATES.

## No. 3198.

Circuit Court of Appeals, Fourth Circuit.

Jan. 12, 1932.

Washington Bowie, Jr., of Baltimore, Md., for appellant.

Charles G. Page, Asst. U. S. Atty., and Simon E. Sobeloff, U. S. Atty., both of Baltimore, Md. (James K. Cullen, Sp. Asst. U. S. Atty., of Baltimore, Md., on the brief), for the United States.

Before PARKER and NORTHCOTT, Circuit Judges, and WEBB, District Judge.

NORTHCOTT, Circuit Judge.

This is a suit brought in the District Court of the United States for the District of Maryland, at Baltimore, upon a bond given by the appellant as surety for Harmon L. Remmel dated November 4, 1925, and conditioned upon the faithful performance of his duties as disbursing agent. The principal on the bond had, for some time prior to the execution thereof, held the position of collector of internal revenue, and, in accordance with USCA, title 26, § 16, he had been duly appointed disbursing agent. The bond in suit is the one required by that section.

The items sued for represent payments made by Remmel, as disbursing agent, to one Cyrus W. Hewett, a deputy collector, on account of subsistence expenses for the months of May, June, July, September, October, and November, 1926, pursuant to the provisions of USCA, title 26, section 57, and title 5, section 823, which said payments approved by the Commissioner of Internal Revenue were in December, 1926, and January, 1927, disallowed by the General Accounting Office.

In June, 1924, Remmel, as collector of internal revenue, recommended that the post of duty of Deputy Hewett be transferred from Little Rock, Ark., to Camden, Ark., and in compliance with this recommendation, the Commissioner of Internal Revenue did designate Camden, Ark., as the post of duty. Hewett, however, was not employed at Camden, but was continuously employed from that time on for nearly two years at El Dorado. Remmel's explanation for his recommendation is contained in a letter written by him on the 22d of November, 1926, to Honorable J. R. McCarl, Comptroller General, in which he was attempting to obtain an allowance for the various items for which suit is now brought. The letter reads, in part, as follows:

"You are advised that El Dorado is the center of a big oil producing district and that since the discovery of oil at El Dorado in 1921, living expenses there have been such that it has been impossible to secure a competent deputy collector to work in El Dorado at the salary paid to deputy collectors if the deputy is to have no expense account. In 1922, the Supervisor of Accounts and Collections of the Bureau of Internal Revenue, and the Commissioner of Internal Revenue approved the post of duty as Camden, although the major part of the work was done at El Dorado, and since 1924 Deputy Hewett has had his designated post of duty at Camden, as heretofore stated on account of the exorbitant cost of living at El Dorado.

"Deputy Hewett's salary is $165.00 per month and if he were compelled to live on that salary with post of duty at El Dorado he would be working for the Government for a salary of his room and board. On account of the emergency arising and on my advice, the Commissioner of Internal Revenue has, since 1922, approved the post of duty as Camden with the understanding that the principal work of the deputy stationed there would be done in El Dorado. * * *

"If the deputy collector is obliged to work at El Dorado and have his post of duty there, it would be necessary to pay him a salary of not less than $250 per month and I have no authority to pay any zone deputy such a salary. In view of the emergency in this case, I believe that you will decide that it.is to the best interest of the government that Deputy Hewett be allowed his expenses for subsistence when away from his designated post of duty."

The monthly payments by Remmel to Hewett were duly reported by him to the Commissioner of Internal Revenue, and approved, and then forwarded to the General Accounting Office for final settlement. On December 1, 1925, the Comptroller General rendered an opinion disallowing credits for expenditures of this type made by disbursing agents.

Thereafter, the Comptroller General refused to allow credit for this type of disbursement and in particular for the subsistence expenses paid by Remmel to Hewett for the months mentioned above. Upon refusal of the defendant and his surety to make payment of the amount disallowed by the Comptroller, this action was brought against the surety.

By agreement, the cause was tried before the court, without a jury, and the court after hearing the evidence gave judgment for the plaintiff in the sum of $885 and costs, from which action of the court below this appeal was brought.

It is contended on behalf of the appellant that the judgment is erroneous for five reasons:

"1. The offices of Collector of Internal Revenue and of Disbursing Agent are separate and distinct, so far as the liability of the sureties upon the bonds is concerned; and the surety upon the bond as Disbursing Agent is not liable for the acts as Collector of Internal Revenue.

"2. The bond in suit speaks from its date and is prospective only and the sureties thereon cannot be held to a liability resulting from acts done prior to its execution and acceptance.

"3. It is the duty of a Disbursing Agent to pay out in accordance with the statutes and regulations. He has no right to question the exercise, by his superior officer, the Commissioner of Internal Revenue, of the discretion committed to said Commissioner by statute.

"4. The General Accounting office having adopted one construction of a statute, and having accepted as valid, payments made under such construction, cannot change its construction so as to make invalid, payments made prior to such change.

"5. The General Accounting office cannot revise the judgments, correct the supposed mistakes or annul the orders of a department head."

■ We are of the opinion that there is no merit in the first and second points. The payment of moneys for which credit is sought for Remmel was made after the bond in suit became effective, and his failure to properly account for public money held by him after the effective date of the bond was a default thereunder. United States v. Maryland Casualty Co. (C. C. A.) 299 F. 942; Walker County v. Fidelity & Deposit Co. of Maryland (C. C. A.) 107 F. 851; Smith v. United States, 170 U. S. 372, 18 S. Ct. 626, 42 L. Ed. 1074.

■ The question is not in any way affected by the fact that Remmel also gave bond as collector. The fact that there were two bonds for the performance of a single duty does not deprive the creditor of his right to sue on either bond.

■■ On the third point it is apparently true that the payments were approved by Remmel's superior officer, the Commissioner of

Internal Revenue, yet Remmel, as disbursing officer, knew the payments were in violation of the statutes of the United States, and it was upon Remmel's recommendation that the Commissioner acted. The approval of the Commissioner was technically unlawful, and a disbursing officer may not be heard to say that he was justified in making a payment he knew to be illegal because his superior officer approved or even ordered it.

■ The authorization of payment by the Commissioner of Internal Revenue was in no sense a regulation adopted to accomplish the purpose of a statute as contended on behalf of appellant. On the contrary, it was an act that violated the act of Congress, and was an attempt to do a thing that the statute forbids. This Remmel knew, as is shown by his letter to the comptroller, above quoted.

■■ An administrative officer, though empowered to make regulations, cannot alter statutes, and may only act within the scope of his authority. Where such action is unlawful the courts do not hesitate to assume jurisdiction. Campbell v. Galeno Chemical Co., 281 U. S. 599, 610, 50 S. Ct. 412, 74 L. Ed. 1063; Sawyer v. United States (C. C. A.) 10 F.(2d) 416, 420; Stieff v. Tait (D. C.) 26 F.(2d) 489; United States v. Symonds, 120 U. S. 46, 7 S. Ct. 411, 30 L. Ed. 557; Phillips v. United States Grain Corporation (C. C. A.) 279 F. 244; Meads v. United States (C. C. A.) 81 F. 684; Bragg City Special Road Dist. v. Johnson, 323 Mo. 990, 20 S.W.(2d) 22 (Anno.) 66 A. L. R. 1059; United States v. Moore (C. C. A.) 168 F. 36, 24 L. R. A. (N. S.) 309; Wisconsin Central R. Co. v. United States, 164 U. S. 190, 17 S. Ct. 45, 41 L. Ed. 399.

An examination of the authorities cited on behalf of appellant shows them not in point. For instance, in United States v. Warfield et al. (C. C. A.) 170 F. 43, 24 L. R. A. (N. S.) 312, 17 Ann. Cas. 1186, the court held the postmaster not accountable because he had acted without knowledge of the facts that would have indicated that the payments were illegal. Such is not the case here.

■ As to the fourth point it certainly cannot be sound to hold that because certain payments were illegally made others alike illegal must also be paid. It was Remmel himself who devised the scheme, and it must certainly be said that he knew all the facts on which the scheme was based. His failure to appreciate the illegality of what he was doing under such circumstances could not operate as an estoppel. It is clear that from his own knowledge of the facts, he must have known

that the acts were illegal, and knowing that he must also have known that he had no authority to obey instructions permitting him to make these expenditures.

The question presented by the fifth point is practically covered by the discussion on the third point. The learned judge below in rendering his judgment said, in part:

"The Court rules as matter of law in this case that if the principal in the bond, Remmel, paid out the money to Hewett, and the money was made up, so far as the sum in suit here is concerned, of an allowance based upon the official residence of Hewett at Camden, and if, notwithstanding such official residence, Hewett was actually living, and employed at El Dorado as the real center and headquarters of his work, and this circumstance was known to Remmel, and if the evidence further shows that the designation of Camden as the official post of duty of Hewett was made by the Commissioner of Internal Revenue upon the recommendation of Remmel, then the Government is entitled to recover in this case the amount of money which was paid to Hewett upon the theory that his post of duty was at Camden.

"The Court further rules that even though these circumstances may have been made known to the Commissioner of Internal Revenue when the designation of the post of duty was made, this circumstance would not alter the liability of Remmel and of his bond in this case. * * *

"Reliance is placed in the case at bar upon the fact that the post of duty was designated by the Commissioner of Internal Revenue under authority of title 26, USCA § 57. That Section does clothe the Commissioner of Internal Revenue with authority to determine and designate the posts of duty of all employees in the Internal Revenue Service engaged in field work or traveling on official business outside of the District of Columbia, and it does entitle such employees when ordered from their designated posts of duty to a certain per diem in lieu of subsistence not exceeding a certain amount; but that section does not confer upon the Commissioner of Internal Revenue, any more than it does upon the Collector who makes the recommendation to the Commissioner, authority to fix a nominal post of duty other than the real post of duty, so that the pay of the individual employee may be swelled.

"There does not seem to be in this case any really corrupt intent; there does not seem to have been any concealment. Nevertheless it is clear that a fictitious post of duty was desig-

nated in order to enable the employee to draw more money than he otherwise would have received. The motive was that owing to great changes in El Dorado, living expenses had gone up so high that a man could not subsist unless in some way he got an additional sum of money. Apparently his pay could not be raised, so this scheme was hit upon of making him a subsistence allowance to supplement his pay. However good the motive may have been, nevertheless these two officers had no right to compel the government to pay out more than the law permitted. It seems clear on the evidence in this case that such was the purpose and act of Remmel, the principal in this bond. It may also be, and probably was, true that the Commissioner of Internal Revenue, or somebody representing him in Washington, knew all about it; but as I have said, that does not alter the situation."

We approve of this clear and logical summing up of the case.

■ Exceptions were taken to the admission of Remmel's letter of November 22, 1926, but it was clearly admissible. Admissions made by a principal in the execution of his duties are admissible in evidence against his surety. United States v. Gaussen, 86 U. S. (19 Wall.) 198, 213, 22 L. Ed. 41; McShane v. Howard Bank, 73 Md. 135, 20 A. 776, 10 L. R. A. 552.

The courts cannot sanction actions of this character that clearly violate the law, no matter how much the parties may have been endeavoring to accomplish a worthy end. It lies only with Congress to do the thing Remmel as disbursing officer and collector endeavored to do.

Affirmed.