PEOPLE'S BANK OF SANFORD, N. C., v.
FIDELITY & DEPOSIT CO. OF
MARYLAND.
No. 51.

District Court, M. D. North Carolina.
Aug. 12, 1933.

Williams & Williams, Hoyle & Hoyle, and Gavin, Teague & Byerly, all of Sanford, N. C., for plaintiff.

I. C. Wright, of Wilmington, N. C., and Julius C. Smith, of Greensboro, N. C., for defendant.

HAYES, District Judge.

On September 23, 1927, the defendant executed a fidelity bond in the penal sum of $25,000, to indemnify the People's Bank of Sanford, N. C., against loss caused by any act of fraud, embezzlement, wrongful abstraction, or misapplication of the bank's assets by H. C. Newbold, its cashier, and the bond was continued in force until the discharge of the cashier on April 7, 1930.

On April 5, 1930, the cashier' met the officials of the bank to prepare a financial statement to the state banking authorities, and confessed to the officers that he had taken

$44,480 of the bank's property, that no one else had anything to do with it, and that he had placed that day his note in the bank in a like sum to cover his shortage.

The loss necessitated the closing of the bank by the directors on April 7. They also indicted the cashier, on that date, for embezzlement. He was tried, convicted, and sent to the penitentiary. The bank brought a civil action against him to recover $44,480 damages sustained by his embezzlement of the bank's assets, alleged to have occurred on or about April 5, 1930, and at September term, 1930, on issues joined, jury returned a verdict in accordance with the complaint, and judgment was accordingly entered for the bank.

In May of the same year the directors and stockholders executed their note to the bank to restore the cashier's shortage, and the bond in suit was treated as additional collateral to the note. Thereupon the Corporation Commission entered an order permitting the bank to reopen and resume business.

Notice of the default of the cashier was given by the Corporation Commission and the bank, and due proof of loss was filed within the time and manner required by the bond, and the action commenced within twelve months from discovery of the loss.

Defendant refused payment, and the bank brought this action in the state court to recover the penalty of the bond. Defendant moved it to the federal court on the diversity of citizenship, and defendant had the case docketed on the equity docket. It denied liability, demanded an accounting, and asked for rescission and cancellation of the bond on the ground that the bank knew of a dishonest act of the cashier six years prior to the execution of the bond, which it wrongfully withheld from the surety.

On the report of the master, the plaintiff moved to docket the case on the law docket, and demanded a jury trial, but defendant objected on the ground that an accounting and the prayer for rescission gave a court of equity jurisdiction, and the plaintiff, by not moving until the report of the master, had waived his rights. The cause was retained on the equity docket.

The defendant insisted that it could not be liable on the bond, as the bank had been paid the shortage by the stockholders and directors; that the bank had no legal capacity to sue, and that the action could be maintained only by the state banking authorities; that the state commissioner could not be made a party to the pending suit, and, if he was made a party, the case would be dismissed as to the bank, and that the commissioner could not recover because he had not brought the suit or been made a party within twelve months of the discovery of the loss.

When the bank closed, its affairs were placed in the possession of the Corporation Commission for liquidation, but during May the commission reopened the bank and permitted it to resume business upon the execution of a note by the directors and stockholders to pay the cashier's shortage.

The bank was reopened and resumed business for some time, during which it brought this action on the bond, but its inability to collect the bond promptly, and to realize on its other assets, forced it back into the hands of Gurney P. Hood, state banking commissioner, who has been made a party and adopted the status and pleadings of the bank.

The defendant is not entitled to rescind and have canceled the fidelity bond. No application was required. The cashier was required to furnish bond. He was the principal stockholder and managed the corporation which represented the defendant and wrote the bond. It was delivered by him to the bank. It contained this clause: "No preliminary application by the employer for this bond is necessary. This contract incorporates the entire agreement between the surety and employer and no statement of fact in any application or other outside writing which might be claimed to be the inducement for making this bond shall be allowed in any way to affect its validity." The contract is a printed form prepared by the surety for hire.

■ The construction of the contract is governed by the same rules applicable to insurance companies, to wit, most strongly against the insurer in case of ambiguity. American Surety Co. v. Pauly, 170 U. S. 136, 18 S. Ct. 552, 42 L. Ed. 977. Since the insured was not asked for a statement, the bond should not be invalidated, if at all, in the absence of allegation and proof that insured intentionally or fraudulently concealed material facts. General Reinsurance Corporation v. Southern Surety Co. (C. C. A.) 27 F.(2d) 265. The evidence in the record fails to prove it. A loan of $6,000 was made in 1921 by the cashier to his brother H. L. Newbold and indorsed by H. C. Newbold. H. L. Newbold was probably an accommodation maker. The directors later approved it, and repeatedly approved the renewals. It was reduced until the balance was $4,000, when H. C. Newbold took it out of the bank immediately before his discharge, and the note has been fully paid

since this action was commenced. The transaction at the inception was at least a technical violation of the banking law of the state, but it does not appear that he intended to injure the bank in any way. Evidently the officers of the bank believed the note was good; that his intentions were free from wrong, for they retained him and trusted him without question from that time until April 5, 1930.

The defendant would have the worst construction put on that transaction and conclude therefrom that the cashier was dishonest and unworthy of confidence or trust; that the bank had actual knowledge thereof, and fraudulently withheld the information from the innocent surety, which amounted to a fraud on it, warranting the court in canceling the bond. It is unreasonable to conclude that the bank would have retained him as cashier from 1921 to 1927 and clothed him with the full control of the bank if it thought he was unworthy of trust. The facts not only do not raise the presumption that the bank had such knowledge and belief, but conclusively create the contrary presumption. Next, the court is urged to presume that the bank, when not asked for a statement, kept silent with intent to defraud. Then the court is asked to presume the bond would not have been executed if the surety had known this fact. There is no fact upon which to base any presumption except the facts and circumstances surrounding the initial loan in 1921. The other presumptions would arise on presumptions, not facts. The rule is well established that a natural and logical presumption may, and often does, arise upon proof of a given state of facts, but another presumption cannot arise from the first presumption in the absence of evidence to support it. General Reinsurance Corporation v. Southern Surety Co., 27 F.(2d) 265, 272 (C. C. A. 8).

The rule is fully stated in United States v. Ross, 92 U. S. 281, 283, 284, 23 L. Ed. 707: "No inference of fact or of law is reliable drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed. * * * The law requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences. * * * A presumption which the jury is to make is not a circumstance in proof; and it is not, therefore, a legitimate foundation for a presumption. There is no open and visible connection between the fact out of which the first presumption arises and the fact sought to be established by the dependent presumption."

The defendant relies on National Bank v. Fidelity & Casualty Co., 89 F. 819 (C. C. A. 4). This case has no application to the facts here. The facts in the instant case are governed by Citizens' Trust & Guaranty Co. v. Globe & Rutgers Fire Insurance Co., 229 F. 326, 330, Ann. Cas. 1917C, 416 (C. C. A. 4), and Magee v. Manhattan Life Insurance Co., 92 U. S. 93, 23 L. Ed. 699.

By its contract the surety dispensed with application, and in its own language made the bond the entire contract between them, and expressly provided that no written statement of fact should affect the validity of the bond. The bank, under the conditions here, was not asked for information concerning the cashier, and its failure to volunteer a statement cannot be the basis, under all the facts disclosed here, for the cancellation of the bond.

The defendant objects to the competency of the evidence of the vice president, who testified that the cashier admitted to him, while in the performance of his duties, that he had taken the assets of the bank and substituted his note to cover the shortage. It is well settled that an admission by the principal in an employee's bond in respect of the performance of the duties guaranteed, if made before termination of employment and while engaged in their discharge, is competent against the surety. The precise question was presented in Guarantee Co. of North America v. Phenix Insurance Co., 124 F. 170 (C. C. A. 8), and numerous authorities are cited in support of the rule. United States v. American Surety Co., 56 F.(2d) 734 (C. C. A. 2). This circuit approves the rule. Fidelity & Deposit Co. v. United States (C. C. A.) 55 F.(2d) 100. It was approved by the Supreme Court in United States v. Gaussen, 86 U. S. (19 Wall.) 198, 213, 22 L. Ed. 41.

Objection was made by the defendant to the introduction of the judgment. A judgment against the principal is, at least, prima facie a breach of the bond, and, unexplained, is sufficient evidence of the breach of condition. United States v. American Surety Co. (C. C. A.) 56 F.(2d) 734, 735; Equitable Surety Co. v. Board of Commissioners, 256 F. 773 (C. C. A. 5); Moses v. United States, 166 U. S. 571, 600, 17 S. Ct. 682, 41 L. Ed. 1119.

Again the defendant insists that the amendment to the original complaint and attaching the second audit to the amendment

restricted the plaintiff to proof of facts only alleged in the amendment. But this contention is contrary to the plain language of the amendment. It was filed as a part of, and supplemental and in addition to, the proof of loss and allegations of the original complaint. The bank supplied the surety in minutest detail all available information it had or could obtain as to the items embezzled and misapplied. It called attention to the placing of the cashier's notes and the depletion of its assets. It furnished the surety with every audit made of the books and records of the bank. The fraudulent acts of the cashier in falsifying the records of the bank in his handwriting in such a skillful way as to deceive the officers of the bank and the state bank examiner made it impossible for the bank to be more explicit as to the items. A bank with $25,000 capital wakes up when its cashier admits he has made away with $44,480 of its assets. There is abundant evidence to show that practically all of this occurred within the last few months of employment.

Defendant moved for a bill of particulars, but never brought the motion to the attention of the court. No order was entered thereon, and the amendment to the complaint is not a bill of particulars.

We are not unmindful that mere proof of shortage is not sufficient to justify a recovery on a fidelity bond such as this. The shortage might arise from causes other than acts of fraud, embezzlement, misapplication, or wrongful abstraction. Here we have uncontradicted proof that the cashier took the assets constituting the shortage, executed his note in payment therefor, judgment was recovered against him for the amount, and he was convicted for embezzlement of the funds and served his term in the penitentiary.

The defendant, instead of checking the records and producing proof to show that, when the cashier placed his serial notes in the bank within a few months before it closed, true assets of the bank did not disappear to offset these items, sought to show what its auditor concluded was the condition of the bank in 1926 and prior to the execution of the bond in 1927. The evidence was plenary to show the bank lost more than $25,-000 by the cashier's acts of fraud, embezzlement, wrongful abstraction, and misapplication of the bank's assets during the term of the bond. The bond was intended to cover losses such as these, and it is hard to conceive how the facts could be made stronger to entitle the plaintiff to relief.

It is urged that the North Carolina Corporation Commission alone had the legal capacity to sue on this bond after the bank closed in 1930. The commission expressly ordered the bank to reopen and to resume banking business. It was made solvent when the note of the directors and stockholders was placed in the bank to make up the cashier's shortage. The bank, then solvent, and authorized to carry on banking business, had authority to sue the surety on the cashier's bond for losses it sustained by the embezzlement of its cashier, as the statute of the state not only authorizes, but requires, all actions prosecuted by the real party in interest. It was the bank that sustained the loss. The recovery was for its benefit. The ultimate beneficiaries were its creditors and stockholders. The action was begun in the state court, and C. S. § 446, requires every action to be prosecuted by the real party in interest. Equity Rule 37 (28 USCA § 723) also requires it. Code 1931, § 218 (b), subsec. 9, confers the right on the state banking authorities to permit closed banks to resume business on such terms and conditions as they may approve. This court will not indulge the presumption that the commission acted without authority, or illegally, in permitting the bank to resume business. Having been made solvent by the secured note, the presumption should be indulged that the bank complied with all prerequisites before resuming operation. At any rate, the bank had sufficient interest in this bond to permit it to prosecute the action against the defendant.

It is urged that the bank was reimbursed by the directors and stockholders for the shortage of the cashier, and that it therefore sustained no loss and could not maintain the action. Under the law of this state, in case of insolvency, the stockholders in banks are liable to an assessment in a sum equal to the par value of their stock. Where, as here, stockholders and directors gave their note to the bank for the amount of the shortage to prevent liquidation, and the bank neither surrenders nor assigns the fidelity bond of the defaulting cashier, the bank is the real party in interest and entitled to maintain the action. 25 C. J. 1110 and 1112. The bank never parted with the possession of the bond. It was retained as collateral to the note. The stockholders and directors have interposed no objection to the bank's action. Should it collect the bond, the note would be credited therewith and the liability of the stockholders correspondingly reduced. If the bank lost $25,000 through embezzlement and misappli-

cation of the cashier, the restoration of these assets until the bank collects on the bond should not be a defense for the surety. The bond is in evidence and will be canceled upon payment. No injury can result to the surety.

The commissioner of banks is clothed with the power to liquidate the assets of an insolvent bank. Code 1931, § 221 (p), gives him, in addition to express and enumerated powers, "such other powers and rights as may be necessary or incident to the proper discharge of his duties." Code 1931, § 221 (q), provides: "He is empowered to sue and prosecute or defend in any action or proceeding in any courts of this State or any other state and in any court of the United States for the enforcement or protection of any right or pursuit of any remedy necessary or proper in connection with the subjects committed to him for administration or in connection with any bank or the rights, liabilities, property or assets thereof, under his supervision." Code 1931, § 218 (c), subsec. 3, provides: "And the commissioner of banks shall be submitted in place of the bank in all actions in the State or Federal Courts, pending at the time of the exercise of such authority." Code 1931, § 218 (c), subsec. 7, among other things, provides: "The commissioner of banks, or the duly appointed agent, shall collect all debts due and claims belonging to such bank, by suit, if necessary; and, by motion in the pending action."

In 1931, ch. 243, the commissioner of banks was substituted for Corporation Commission. The Supreme Court in Taylor v. Everett, 188 N. C. 247, 124 S. E. 316, held, in construing the statutes relating to the powers of the Corporation Commission, that the commission may, without taking possession of the business and property of a state bank, where imminent danger of insolvency exists, direct upon what conditions its officers may continue in its management and control. The action of the Corporation Commission in 1930 was in accord with this decision. It is to be observed that the bank as a legal entity is not dissolved and does not cease to exist, but its powers are exercised by the commissioner (formerly the Corporation Commission) for the purpose of converting the assets, paying its liabilities, and distributing the surplus, if any, among the stockholders.

Where a bank is rendered insolvent by the embezzlement of its cashier who is under a fidelity bond, and its directors and stockholders execute a note for the shortage, the fidelity bond being still in the bank's possession as collateral to the note, and thereby restore it to solvency, and the bank, being authorized by the Corporation Commission to resume business, brings an action in the state court to recover on the fidelity bond, and thereafter the assets of the bank are taken over by the commissioner of banks, but before the final termination of the action on the bond, upon the commissioner being made a party to the action, in no sense is a new cause of action created, but, in reality, the same cause continues.

C. S. § 461, provides: "No action abates by the death, marriage, or other disability of a party, or by the transfer of any interest therein, if the cause of action survives, or continues."

It therefore follows that the statute of limitation and the provision in the bond requiring suit to be brought within twelve months from the discovery of loss has no application here, for the suit, in the name of the bank, was instituted within that time, and the commissioner is merely a statutory liquidating agent of the bank, authorized to become a party in any pending action of the bank, and to prosecute it to finality. 37 C. J. 1064, 1065, and 1067.

It would be a needless waste of time and expense if this action had to be dismissed and traversed again by the liquidating agent of the bank. National Electric Signaling Co. v. Telefunken Wireless Telegraph Co., 208 F. 679–697 (C. C. A. 3); Hines v. Smith (C. C. A.) 270 F. 132.