## SMITH *v.* UNITED STATES.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 212. Submitted April 20, 1898. — Decided May 9, 1898.

When an entryman goes to the public land office for the purpose of obtaining public-land, and is told by the receiver that his proofs cannot be filed or accepted unless and until he pays the purchase price of the land, which he thereupon does, he makes such payment to the receiver as a public officer of the United States, and not to him as the agent of the entryman, and the payment is to be regarded as one made to the Government and as public money, within the meaning of the law and of any bond given for the faithful discharge of the duties of his office by the receiver, and for his honestly accounting for all public funds and property coming into his hands.

This action was brought against Frederick W. Smith and the sureties on his official bond as receiver of public moneys in the Tucson land district in the Territory of Arizona. The bond was dated March 7, 1888, and the condition therein was that "if the said Frederick W. Smith shall, at all times during his holding and remaining in said office, carefully discharge the duties thereof, and faithfully disburse all public moneys, and honestly account, without fraud or delay, for

the same and for all public funds and property which shall or may come into his hands, then the above obligation to be void and of no effect; otherwise, to remain in full force and virtue."

Smith was appointed receiver on the 28th of February, 1887, and remained such receiver until the latter part of November, 1889, when he was removed and Charles R. Drake was appointed his successor, who assumed the duties of the office and took charge of the books and papers on December 3, 1889. The Government claimed that the condition of the bond had been violated by the failure of Smith to faithfully disburse all public moneys and to honestly account for the same, and that he was indebted to the Government by reason thereof in various sums, amounting to over $19,000. During the time of Smith's incumbency there was either no register of the land office in the Tucson district, or the person occupying that position was in such ill health as to be unable to attend to the duties of the office. Smith was himself also in ill health during 1889. Owing to these facts the business of the office ran largely behind, and there were so many persons presenting their proofs and making their payments to Receiver Smith, before he was ready to pass upon the sufficiency of such proofs and before the register had acted upon any of them, that a large sum of money thereby accumulated in the hands of the receiver, amounting at the time he was removed from office to about the sum of $40,000. Prior to the time when the receiver was removed from office in November, 1889, no final action had been taken by him or the register in regard to any of the applications involved in this record.

Before his removal it had been the custom of the Land Department not to permit the giving of any receipt by a receiver, for money paid him by an applicant for entry, until such application had been finally acted upon by the receiver and the register, and then, if favorably decided, the custom was for the receiver to charge himself in his account with the Government with the amount of the money which had already been paid him by the applicant. If the application were not favorably acted upon, it was then the custom of a receiver to

return the money to the applicant. This was authorized by the Government.

An agent of the Government came to Tucson after the receiver's removal and on examining his books stated that the receiver did not owe the Government anything. One of the sureties on the receiver's bond had heard of the receipt of these moneys by Smith, and had obtained from him $25,000, being part of the moneys which Smith had received as above mentioned. While in possession of this money the surety saw the agent of the Government and inquired if there were any charges against the receiver, his principal, and that he wanted to know so that he might use the money Smith had paid him to repay the Government any amount that might be found due on an accounting, and he was told by the agent that Smith's accounts were all right, and that he did not owe the Government a dollar. It is claimed that thereafter the $25,000 were refunded to the entrymen who had made pay-. ments to Smith, until the amount was exhausted.

In April, 1890, there was still a very large accumulation of cases in the Tucson office where proofs had been made and filed with Smith, and moneys had been paid to him, while re-ceiver, as the purchase price of the lands desired and no final receipts had been given by him or his successor. In this con-dition of affairs the Commissioner of the General Land Office wrote the following letter:

" Letter ' M.'
" DEPARTMENT OF THE INTERIOR,
" GENERAL LAND OFFICE,
" WASHINGTON D.C. *April* 30, 1890.
" Register and Receiver, Tucson, Arizona:

" SIR: I enclose herewith a statement as taken from the rec-ords of your office, showing the final proofs now in your office awaiting examination on which the money in payment for the same was paid to Fred. W. Smith, the late receiver, and was by him appropriated to his own use and never accounted for to the United States. You are instructed to examine all the final proofs now in your office, as shown by the accompanying

list, and if the same is found sufficient, you will request the parties in interest to furnish an affidavit, properly attested, showing that they did pay the money to Fred. W. Smith, and whether the same was paid by draft or check. If the parties can furnish certified copies of these drafts or checks from the cashier of the bank showing the same, you will obtain these copies and allow the entries as of date when proof and payment were made. You will refer on the entry papers and upon your records to this letter by initial and date as your authority therefor. The receiver will enter upon the books of his office, under the account of Fred. W. Smith, late receiver, the amount of purchase money received for each class of entry. You will give to said entries a half number corresponding to the time when said proof was accepted and prepare supplemental abstracts of the same, noting thereon, 'Allowed by letter " M " of April 30,' and purchase money is to be charged to Fred. W. Smith, the late receiver. You will then prepare an account current, Form 4-105, thereof and certify therein that the transaction reported appears from the records of your office. The receiver will send a duplicate receipt to the entrymen in accordance with the instructions herein contained, noting on the receipt, as his authority, this letter by initial and date; and after you have carefully examined all of these papers as instructed in this letter, you will forward them to this office for future consideration.

" The decision of this office heretofore has been against the allowance of an entry where the money be payable to the receiver of public moneys if the moneys were not properly accounted for or deposited to the credit of the Treasurer of the United States; but, as a matter of equity, in view of the general circular of this office, which provides that proof without payment must in no case be accepted or received by register and receiver, and in view of the fact that entrymen had made their payments in accord with this circular issued by this office, it is the opinion of this office that the entries should be allowed. I am aware that the views herein expressed are in conflict with the practice above referred to, but my understanding of the law and convictions of equity are so strong and

clear that, reluctant as I am to change the former practices, I feel myself compelled to do so in this case. I therefore hold that the moneys paid by entrymen to Fredrick W. Smith, receiver, and received by him in his official capacity as such, were public moneys within the meaning and intent of the law, and the payment to him was a payment to the Government. The recourse of the United States is under the official bond of Mr. Smith, and, as suit has already been instituted for the recovery of the amount received by him, the entries should be allowed without further delay.

"Very respectfully;                      WILLIAM STONE,
                              "Assistant Commissioner."

Pursuant to the directions contained in the above letter, the receiver, Mr. Drake, issued, in all cases where the proofs were satisfactory, final receipts to the various entrymen who had made applications for entry and paid their money to Smith while he was receiver, and the payments to Smith in such cases were recognized as payments to the Government.

Upon the trial of the action in the Arizona court judgment for nearly six thousand dollars was given for the United States for the amount found to be due by the jury in cases where payments had been made to Smith and the final proofs had been favorably decided upon by his successor. That judgment was affirmed by the Supreme Court of the Territory, and the defendants brought the case here for review.

Mr. L. E. Payson and Mr. W. H. Barnes for appellants.

Mr. Solicitor General and Mr. Felix Brannigan for appellees.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

The question to be determined in this case is, whether, under the circumstances above set forth, the moneys received by Receiver Smith, and to recover which the action herein

was commenced, were public moneys within the meaning of the law and the bond given by the receiver.

The moneys paid to the receiver were paid upon the making of proofs by the entrymen under various statutes of the United States providing for the sale of the public lands, such as the statute relating to preëmptions, Rev. Stat. §§ 2257–2288; the statute relating to homesteads, Rev. Stat. §§ 2289–2317; the statute relating to the sale of desert lands. Act of March 3, 1877, c. 107, 19 Stat. 377. In the course of the proceedings under these acts and in the examination of the proofs submitted, various questions of fact arise and are to be decided by the register and receiver, who are to be satisfied of the existence of the necessary facts mentioned in the statute, and of the regularity and sufficiency of the proofs. When so satisfied the register issues his certificate to that effect, and the receiver gives what is known as a "final receipt," and upon the two papers the patent finally issues. There must be the favorable action of both register and receiver before the final papers issue, but such action need not be simultaneous. The receiver may act at one time and the register at another, but both must act before the case is concluded and the papers signed upon which the patent is subsequently issued. *Lytle* v. *Arkansas*, 9 How. 314; *Potter* v. *United States*, 107 U. S. 126.

The statutes are somewhat general in their provisions as to the time of payment of the purchase price of the lands, merely providing that the entries desired may be made upon satisfactory proof being made to the register and receiver and "upon paying to the United States the minimum price of such land."

The statutes do not provide that the entryman shall not pay the money before the final decision is made determining the sufficiency of his proofs, but they simply provide that when the register and receiver are so satisfied and upon payment of the money, entry may be made. The matter of the time of payment, so long as it is made before the entry, is thus left for regulation by the department having the matter in charge. Such regulations are made under § 161 Rev. Stat., permitting each head of a department to prescribe regulations, not incon-

sistent with law, for the government of his department and the conduct of its officers and clerks, etc.

Acting under the authority of section 161, the General Land Office provided by its general circular with regard to the time when payment for public lands sold should be made, and directed "that proofs without payment must in no case be accepted." This regulation did not refer to "final" acceptance of proof, resulting in a favorable decision upon the application. The statutes already provided that it was only *upon payment* that the entry might be made. The regulation referred to the taking of the proofs at all. It could only mean that no proof proffered by an entryman should be received without payment of the purchase price of the land which he desired to purchase. The probable purpose of the rule was to prevent the unnecessary examination of proofs in cases where they might be found to be satisfactory and yet the purchase price should not then be forthcoming. Whatever the reason, the direction was plain and unambiguous, and it absolutely forbade the reception of the proofs of the entryman unless at the same time he paid the purchase price to the receiver for the lands which he proposed to buy. Thus the entryman could not make his proofs and leave them with the receiver for him and the register subsequently to act upon them, unless the entryman at the time of making his proofs and leaving them for future examination and decision paid the purchase price for the lands. This regulation is not inconsistent with or in violation of the statutes in regard to payment. As we have observed, the payment must by statute be made before entry is allowed, but the particular time is not stated. The regulation above mentioned then comes in, the effect of which is to prevent the acceptance of proof without payment, and the payment must therefore be made when the proof is offered, and it may be some time before it is favorably acted upon by both register and receiver. Thus under provision of law and pursuant to valid requirements of the Land Office the entryman is compelled to pay his money at the time he proffers his proofs and before final action upon them is taken by the two public officers designated in the statutes. When the entryman

goes to the public land office for the purpose of obtaining the land he desires, and is told that his proofs cannot be filed or accepted unless and until he pays the purchase price of the land, which he thereupon does, he makes such payment to the receiver as a public officer, acting in the line of his duty, and it is safe to say that the entryman is without any thought or intention of paying the money to such receiver as his own private agent, to be kept by that agent in trust until the proofs are satisfactory, and to be then paid by him to the Government; nor are the circumstances of that nature which would lead to the belief that in making such payment the entryman is in fact trusting to the good faith and integrity of the receiver as his agent and that he does not regard himself as dealing with a public officer of the Government. The law accords with the fact. How can it be said that the money which he pays does not become public money upon such payment, when he pays it pursuant to law as the purchase price of land which he desires to buy and the money is exacted from him by the Government before any final action is taken upon his application? What difference does it make that the Government comes under an obligation to repay the money to the man in case the proofs are not finally accepted? The money is none the less public money when paid to this public official pursuant to law and under the direction and by reason of the regulations of the Land Office. See *King* v. *United States,* 99 U. S. 229.

As the party taking the money is a public officer, and as he exacts the payment, and such exaction is in pursuance of a regulation of the General Land Office, and is consistent with and authorized by law, it seems to us that the money thus paid is received by the receiver as public money and in his official capacity, and he is neither in law nor in fact the agent of the entryman. If the proofs are unsatisfactory and the money is returned, it is returned by the receiver as a public officer and as the agent of the Government, and the money is returned by the Government through its agent.

The custom of the Land Office at the time in question not to have such money appear in the accounts of the receiver

with the Government until after the proofs had been passed upon by both register and receiver and a final receipt given, does not affect the character of the money so paid. The receiver receives the money as a public officer pursuant to the provisions of law. While in the hands of the receiver it remains public money, received by him by virtue of his office, and the money belongs to the Government as between it and the receiver, although it may be under obligations to return the same to the entryman in case his proofs were rejected. When the Government authorized the return of the money by the receiver, in making such return he acted as its agent and not as the agent of the entryman, and the payment was not by the receiver in his personal capacity.

It is true that on some occasions prior to the execution of this bond it had been decided by the Commissioner of the General Land Office that under the law the money paid to a receiver by an entryman before the final determination of his application and a certificate given by the register was not public money, but was paid by the entryman to the receiver as his own agent, and that until the proofs were favorably passed upon and a final receipt given, the money in the hands of the receiver was at the risk of the entryman; it was received by the receiver in his personal capacity as a private individual, and if not properly paid over recourse for the money must be had against the receiver personally by the parties aggrieved. Such was the case of *Matthiessen* v. *Ward*, 6 L. O. Decs. 713. This rule was upheld by the Secretary of the Interior.

The decision does not refer to the regulation made by the department that no proof shall be accepted from the entrymen without payment of the money. This regulation is a most vital part of the whole proceeding, and instead of the moneys not being payable to the receiver until an entry had been allowed by the register and a certificate given, the regulation of the department distinctly provided that payment of the purchase price was to be insisted upon as a condition precedent to the acceptance of proofs at all. The decision of the department was not in any sense a regulation under section

161 of the Revised Statutes, but was the opinion of the Secretary upon the law and regulations as they existed. Such opinion is entitled to and it receives great respect and consideration by this court, but it is not binding upon us as a valid regulation of the department and cannot be so regarded.

We are unable, for the reasons already stated, to concur with the opinion of the Commissioner.

These distinctions between the acts of the receiver as an alleged agent of the entryman in receiving the money prior to the decision upon the sufficiency of the proofs, and the same receiver as agent of the Government in the keeping of public moneys, ought not to be created by any refined reasoning. Fair protection of the entryman in his dealings with the Government ought to be given when possible. There can be no doubt of the fact that the entryman has no idea of any such distinction, nor can there be any doubt of the fact that when he pays the money to the receiver he supposes he is paying it to the Government through its public officer, and by reason of provisions of law and the regulations of the department.

Public money in the sense of the law, and as used in this bond, is money which legally comes to the receiver by virtue of his office and as a public officer and while carrying out the duties of his office, and he cannot be permitted to say that it was not public money when so received. Being public money, he is bound to account.

Is there any alteration of this liability caused by his removal from office before he has finally accounted for the moneys he received on these various applications? We think not. The applications are to be acted upon by the register and receiver; that is, by those persons who at the time of such action hold these offices. It is not a matter personal to the individual who receives the money, and therefore when the person receiving the money is removed from office before the proofs are finally acted upon by the register and receiver, and action is subsequently had by the receiver's successor in office, and the proofs are finally accepted by such successor and by the register, the Government is as much bound by such acceptance as if it had been acknowledged by the receiver who

received the money, and his obligation to account for the money which he received still remains in full force and is not altered in the slightest degree by the fact of his removal from office. As the agent of the Government he received it, and upon the acceptance of the proofs and final receipt it becomes the duty of the Government to issue the patent, and the fact that its agent had not paid the money over to it would constitute no defence to its obligation to issue the patent when the proofs were found satisfactory.

There may have been no breach of the bond at the time of his removal from office, but the liability of the receiver to account remained, and the bond continued in force until he had fully accounted and thus had fulfilled all the conditions of his bond. His repayment to the entryman, after his removal, in case the proof were rejected, would be an accounting *pro tanto* to the Government, the repayment being authorized and recognized by it as the fulfilment to that extent of the duty of the Government to make such repayment.

In this view the liability of the defendant and his sureties does not depend at all upon the letter written by the Commissioner and set forth in the above statement of facts. The letter simply officially recognized the duty of the receiver who then occupied the office to issue the final receipt when the officials were satisfied with the proofs and the money had been theretofore paid to Smith. Although before the writing of the letter the Land Office had not recognized its obligation to issue patents under the circumstances developed in this case and had refused to issue them unless it were again paid the money, that practice, as we have said, did not alter the law and did not take away or affect the obligation and liability of the Government to issue the patent when the proofs were found satisfactory.

Setting the letter aside, the liability of the Government remains the same, the character of the money received by the receiver remains the same, and the liability of himself and his sureties is of the same nature and of the same degree without the letter as with it. This, therefore, is no case of an alteration of the law or of the obligations of the bond made subse-

quently to the time of its execution, and we are not called upon to discuss the question as to how far alterations of the regulations or of the law may affect the continued obligation of the obligors in a bond like this.

Substantially the same question that we have been discussing arose in the case of *Meads* v. *United States,* decided in the Circuit Court of Appeals, Sixth Circuit, in July, 1897, and reported in 54 U. S. App. 150; also in 81 Fed. Rep. 684. The case was heard before Circuit Judges Taft and Lurton, and District Judge Clark, and conclusion arrived at in that case is in accord with that which we have come to herein.

There is no question of estoppel in the case. The surety had possession of some $25,000 of the moneys collected by the receiver, and when the agent of the Government said that the receiver did not owe it a dollar, the surety repaid to the various entrymen the amounts that they had paid, as far as the money went. In doing so, he lessened by that amount the liability of the sureties on the bond, and there is no proof that any portion of the indebtedness for which this judgment was recovered was represented in those payments.

We think this case was correctly decided, and the judgment is, therefore,

*Affirmed.*