UNITED STATES ex rel. SYKES v. LANE, Secretary of the Interior.

(Court of Appeals of District of Columbia. Submitted April 3, 1919. Decided May 5, 1919.)

No. 3245.

1. DEEDS ☞54, 56(1)—EXECUTION—"DELIVERY" NECESSARY.

A deed is not executed until delivered, and the mere act of signature does not constitute a "delivery."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Delivery.]

2. INDIANS ☞15(2)—ALLOTTED LANDS—"EXECUTION" BY ALLOTTEE.

Where the Secretary of the Interior removed restrictions upon alienating Indian allotted lands, effective upon the "execution" of a deed by the allottee, a deed signed by the allottee and given to an Indian superintendent for transmission to the purchaser does not pass title, and is subject to cancellation by the Secretary, since the deed's "execution" had not been completed by delivery.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Execution.]

3. INDIANS ☞15(1)—DEEDS—"DELIVERY" BY INDIAN TO INDIAN SUPERINTENDENT.

Where an Indian allottee signed a deed and transmitted it to an Indian superintendent for delivery to the purchaser, the superintendent was not the purchaser's agent, and his reception of the deed did not constitute a delivery.

4. INDIANS ☞15(2)—DISCRETION OF SECRETARY OF INTERIOR AS TO ALIENATION OF LANDS.

The judgment of the Secretary of the Interior as to removing restrictions upon the alienation of Indian allotted lands will not be disturbed by the courts, unless clearly arbitrary.

Appeal from the Supreme Court of the District of Columbia.

Mandamus proceeding by the United States of America, on the relation of C. E. Sykes, against Franklin K. Lane, Secretary of the Interior. From a judgment denying the writ, relator appeals. Affirmed.

Alexander Britton and F. W. Clements, both of Washington, D. C., and H. A. Ledbetter, of Ardmore, Okl., for appellant.

Charles D. Mahaffie and C. Edward Wright, both of Washington, D. C., for appellee.

SMYTH, Chief Justice. This case involves the right of the relator, Sykes, to a mandamus against the Secretary of the Interior, requiring him to deliver to Sykes a deed for land allotted to Dwight Butter, a full-blood Choctaw Indian, in distribution of the tribal property. Congress placed certain restrictions upon the alienation of such land, but by Act May 27, 1908, c. 199, 35 Stat. 311, the Secretary of the Interior was authorized to remove them "under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe." Pursuant to this authority the Secretary provided for the removal of the restrictions on Butter's property by the following order:

"Now, therefore, I, under the authority vested in me by the act of Congress of May 27, 1908, Public No. 140, and the regulations prescribed thereunder, hereby remove the restrictions from said described land, such removal of restrictions to be effective only and simultaneously with the execution of deed by said allottee to the purchaser after said land has been sold in compliance with the directions of the Secretary of the Interior."

By direction of the Secretary the land in question was offered for sale at public auction for the benefit of Butter, having been first appraised at $1,300. Sykes bid $1,500 and paid down one-tenth of the purchase price, as required by the terms on which the property was offered for sale. The clerk in charge notified the superintendent of the Five Civilized Tribes of Syke's bid, and recommended that it be accepted. In turn the superintendent informed Butter of the offer and requested him to execute a deed for the land, if the offer was acceptable to him. Butter appeared before one Foltz, a representative of the superintendent, and signed, and delivered to him, a deed for the land in favor of Sykes. This deed Foltz sent to the superintendent. Soon thereafter the latter, having learned that a very large gas well had been "brought in" within 1½ miles of the land, informed Butter of it by letter and asked him if he was still willing to accept Syke's offer, and, if not, the deed would be returned to him for cancellation. Butter wrote at first that he wanted $2,000 instead of $1,500 from Sykes, and later asked $5,000 or $6,000. Some time afterwards he changed his mind and requested the superintendent to deliver the deed to Sykes and collect from him the $1,500. This the superintendent refused to do, saying:

"It is not believed that it would be to your best interests at this time to sell this land."

The action of the superintendent was reported to the Secretary of the Interior through the proper channels, and approved by him.

[1-3] The order of the Secretary of the Interior by its plain terms, as we have seen, was to be "effective only and simultaneously with the execution of deed by said allottee to the purchaser." Until then the restriction on alienation remained, and while it did no one could acquire title to the property. With this order Sykes was familiar, or at least he is presumed to have been, when he bid. We do not understand that he takes any issue on this point. The only question, then, before us is as to whether or not the deed from Butter was executed, within the meaning of the order. If it was, Sykes is entitled to have it delivered to him; if it was not, he has no right to it. He urges that the signing of the deed by Butter was an execution of it in a colloquial sense, but the order of the Secretary of the Interior is not to be interpreted according to colloquial standards. It must be read in harmony with its legal meaning. The mere signing of a deed does not constitute a delivery of it, and unless it is delivered it cannot be said to be executed. "The averment in the petition," says the Supreme Court of Nebraska, "that the grantors 'made and executed' the deed, under the definitions already given, includes the delivery of the instrument as a conveyance of the property." Brown v. Westerfield, 47 Neb. 399, 403, 66 N. W. 439 (53 Am. St. Rep. 532). The word "exe-

cution," when used with reference to a deed, "legally means not only the signing of the instrument, but also included its delivery, which completes the execution and gives validity to the deed." Tucker v. Helgren, 102 Minn. 382, 384, 113 N. W. 912. To the same effect are Collins v. Cornwell et al., 131 Ind. 20, 21, 30 N. E. 796; Farrior v. New England Mortgage Security Co., 88 Ala. 275, 277, 7 South. 200. The act of delivery symbolizes the passage of title from the seller to the purchaser.

Was the superintendent Sykes' agent or the agent of Butter? We do not think he was either, for he was a public officer discharging his duties as such when he received the deed from Butter. Smith v. United States, 170 U. S. 372, 18 Sup. Ct. 626, 42 L. Ed. 1074. But, whether or not he was the agent of Butter, he certainly was not the representative of Sykes, and in consequence the delivery to him was not a delivery to Sykes. Butter, it is true, authorized him to deliver it to Sykes, but he did not execute the power, and until it was executed no title passed.

[4] If there were any doubt about this, which there is not, we would resolve it in favor of the Secretary. He is charged by law with the important duty of protecting and safeguarding the interests of the Indians in such transactions as the one before us, and his judgment in such matters, unless clearly arbitrary, will not be disturbed by the courts. Duncan Townsite v. Lane, 245 U. S. 308, 38 Sup. Ct. 99, 62 L. Ed. 309. This we have said more than once. United States v. Lane, 48 App. D. C. 279; United States ex rel. Ashley v. Roper, 48 App. D. C. 69, 75; Handel v. Lane, 45 App. D. C. 389.

We think the judgment of the lower court is right, and it is therefore affirmed, with costs.

Affirmed.