22 U.S. 720 (1824)
9 Wheat. 720
The UNITED STATES
v.
KIRKPATRICK and others.
Supreme Court of United States.
March 17, 1824.
March 20, 1824.
*723 The Attorney-General, for the plaintiffs.
Mr. Alexander and Mr. Foster, contra.
*729 Mr. Justice STORY delivered the opinion of the Court.
In this case, the Court cannot but lament the extreme irregularity and laxity of the pleadings, if, indeed, the informal minutes upon the record be entitled, in any measure, to the appellation of pleadings. Some apology is, indeed, to be found in the asserted inaccurate local practice in the State Courts; but it is impossible, without breaking down the best settled principles of law, not to perceive that the very errors in the pleadings are, of themselves, sufficient to justify a reversal of the judgment, and an award of a repleader. The agreement of the parties, filed in the case, may, indeed, help the formal defects, but cannot be admitted to dispense with the substance of appropriate pleas; for, otherwise, it would be difficult to ascertain what was tried, or to be tried; and we might as well dispense with the declaration itself, as with the subsequent pleadings. It is to be hoped that, in future, a more correct *730 practice will find its way into the District Court.
Three errors have been insisted upon by the Government, as contained in the charge of the Court below. The first is, that the Judge limited the responsibility of the sureties upon the Collector's bond, to the duties and obligations imposed by the acts of Congress, antecedently passed, thus excluding the liability created by the subsequent statutes. The second is, the direction of the Judge, that the jury were at liberty to impute laches to the Government, from the delay to call the Collector to account, at the periods prescribed by law, and the consequent injury to the sureties. The third is, the direction, that the payments made by the Collector might, under the circumstances, be applied to the discharge of the balance due from collections made under the acts which were in force when the bond was given.
As to the first point. The Collector was appointed, under the act of the 22d of July, 1813, ch. 16., for the assessment and collection of direct taxes and internal duties. In the 2d section it provides, "That one Collector, &c. shall be appointed for each of the said collection districts, &c.; and if the appointment of the said Collectors, or any of them, shall not be made during the present session, the President of the United States shall be, and is hereby, empowered to make such appointment, during the recess of the Senate, by granting commissions, which shall expire at the end of their next session." The 18th section of the same act further provides, "that each Collector, *731 &c. shall give bond, with one or more good and sufficient sureties, &c. in at least double the amount of the taxes assessed in the collection district for which he may be appointed, which bond shall be payable to the United States, with condition for the true and faithful discharge of the duties of his office, according to law, and particularly for the due collection and payment of all moneys assessed upon such district." The condition of this bond principally refers, as will appear on an inspection of the act, to assessments of direct taxes. But the subsequent acts, (act of the 24th of July, 1813, ch. 21. s. 14., and ch. 24. s. 6., and ch. 25. s. 3. and s. 10., and the act of the 3d of August, 1813, ch. 38. s. 2. and s. 5., and ch. 51. s. 13.) laying internal duties, contain provisions enlarging the authority of the Collector; and the act of 2d of August, 1813, ch. 55., expressly extends the liability under the bond, to the due collection and payment of all moneys accruing from the duties laid by these acts. So that there is no doubt that, as to bonds subsequently given, the language of the condition is to receive an interpretation which shall secure the fidelity of the Collector under all these acts. The Collector, whose bond is in question, was appointed by the President, on the 11th of November, 1813, and, by the terms of his commission, he was to hold his office during the pleasure of the President, "and until the end of the next session of the Senate of the United States, and no longer." The bond in question was given by the Collector, and by the defendants, as his sureties. on the 4th of *732 December, of the same year; and it follows, in its terms, the requirements of the act of Congress. On the 24th of January, 1814, the President, with the advice and consent of the Senate, re-appointed the party Collector, &c.; and by his new commission, he was to hold his office "during the pleasure of the President of the United States for the time being." No new bond was taken under this commission. Under these circumstances, the District Judge held, that the liability of the sureties was strictly confined to the duties and obligations created by the acts passed antecedent to the date of the bond. And we are of opinion that this is the true construction of the condition of the bond. There is nothing in the original act, under which the appointment was made, which contemplates a permanent and continuing liability for all duties under all laws which might be subsequently passed. In its terms, the condition, as expounded by the other parts of the act, had a principal reference to the assessments of direct taxes; and it is extended farther in its operation, only by the express and positive directions of the act of 2d of August, 1813, ch. 55. s. 1. To this extent, therefore, it may well be of force; but to go beyond it, would be to exceed the legislative declaration, and create a general, where the act had fixed a limited, responsibility. If the argument on behalf of the Government were correct, the provision, so solicitously placed in this last act, was wholly unnecessary; for the liability would expand with the new duties imposed by every successive act of the Legislature. But the act itself *733 furnishes no ground for such an exposition; and we do not feel ourselves at liberty to give to contracts of this sort further efficacy than the laws and the parties must have had in their contemplation.
This point, however, becomes of comparatively small importance in the cause, if another, which has been argued in this connexion, cannot be maintained. We allude to the question as to the duration and force of the original commission of the Collector. Strictly speaking, this question does not arise upon the present record. For, although the Court below decided, that, in point of law, both commissions constituted but one continuing appointment, the second commission operating only as a confirmation of the first, yet, as the verdict was found for the defendants on another ground, and no exception was taken by them, it is not matter of error which can be assigned upon the present occasion. But, as it is manifest that the same question must arise upon any subsequent trial, if there should be a reversal of the judgment, and will form a most important, and, perhaps, decisive, ground of argument; and as all the parties are desirous of our opinion on this point, and it has been fully argued from its bearing on the other points in the cause, and might have been material, if our decision on the first point had been different, we have no hesitation in declaring our opinion, that the decision of the Court below was founded in mistake.
The act under which this appointment was made, authorizes the President, in the recess of the Senate, *734 to make appointments, by granting commissions, which shall expire at the end of their next session. The first commission is, as has been already stated, in conformity to this provision of the act, and is, by express terms, limited to continue to the "end of the next session of the Senate, and no longer." It follows, therefore, both by the enactment of law and the form of the grant, that the first commission must have expired of itself at that period; and, as the next session of the Senate ended in April, 1814, that is the utmost extent to which it could reach. The bond in question was given with express reference to this commission; and its obligatory force was, consequently, confined to acts done while that commission had a legal continuance, and could not go beyond it. And here would have been the natural termination of the liability. But, in the mean time, a new appointment was made by the President, with the advice and consent of the Senate; and as soon as that was accepted by the Collector, it was a virtual superseding and surrender of the former commission. The two commissions cannot be considered as one continuing appointment, without manifest repugnancy. The commissions are not only different in date, and given under different authorities and sureties, but they are of different natures. The first is limited in its duration to a specified period; the second is unlimited in duration, and during the pleasure of the President. If the latter operated merely as a confirmation of the former, then it confirmed its existence only during the original period fixed by the law. But *735 such an effect is not pretended, and would be irreconcilable with the terms and intent of the commission. It has been suggested, that the practice of the Government has been, to consider such commissions as one continuing commission. But whatever weight the practice of the Government may be entitled to, in cases of doubtful construction, it can have no influence to change the clear language of the law. In short, if the nomination to, and approval by the Senate, was a mere confirmation, and not equivalent to a new appointment, there was no necessity for the second commission; and yet, the argument supposes, that it could not be dispensed with; for if no commission had been issued, the first, by its own limitation, would have expired.
Then, as to the point of laches, we are of opinion that the charge of the Court below, which supposes that laches will discharge the bond, cannot be maintained as law. The general principle is, that laches is not imputable to the Government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions. It would, in effect, work a repeal of all its securities. On the other hand, the mischiefs to the agents and their sureties would be scarcely less tolerable. For if, where the laws, as in the *736 present instance, require quarterly accounts and settlements, a mere omission to account is to be deemed a breach of the bond, for which a suit must be immediately brought, upon the peril of loss from imputed laches; the Collectors and their sureties would be oppressed with the most expensive and vexatious litigation; and their whole real estate, which by law is subjected to a lien, upon the commencement of a suit, would be perpetually embarrassed in its transfers. This consideration of public or private inconvenience, is not to overrule the settled principles of law, but it is certainly entitled to great weight, where a new doctrine is to be promulgated. It is admitted, that mere laches, unaccompanied with fraud, forms no discharge of a contract of this nature, between private individuals. Such is the clear result of the authorities. Why, then, should a more rigid principle be applied to the government? a principle which is at war with the general indulgence allowed to its rights, which are ordinarily protected from the bars arising from length of time and negligence? It is said, that the laws require, that settlements should be made at short and stated periods; and that the sureties have a right to look to this as their security. But these provisions of the law are created by the Government for its own security and protection, and to regulate the conduct of its own officers. They are merely directory to such officers, and constitute no part of the contract with the surety. The surety may place confidence in the agents of the Government, and rely on their fidelity in office; but he has of this the same means *737 of judgment as the Government itself; and the latter does not undertake to guaranty such fidelity. No case has been cited at the bar, in support of the doctrine, except that of The People v. Jansen, in 7 Johns. Rep. 332. In respect to that case, it may be observed, that it is distinguishable from the present in some of its leading circumstances. But if it were not, we are not prepared to yield to its authority. It is encountered by other authorities, which have been cited at the bar; and the total silence in the English books, in a case of so frequent occurrence, affords strong reason to believe, that it never has been supposed, that laches would be fatal in the case of the Government, where it would not affect private persons. Without going more at large into this question, we are of opinion, that the mere laches of the public officers constitutes no ground of discharge in the present case.
The last ground respects the manner in which the Court below laid down the law respecting the appropriation of payments. In our opinion, there is no error in the charge on this point. The general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according to its own notions of justice. It is certainly too late for either party to claim a right to make an appropriation, after the controversy has arisen, and a fortiori at the time of the trial. In cases like the present, of long and running accounts, where debits and credits are perpetually occurring, *738 and no balances are otherwise adjusted than for the mere purpose of making rests, we are of opinion, that payments ought to be applied to extinguish the debts according to the priority of time: so that the credits are to be deemed payments pro tanto of the debts antecedently due.
Upon the whole, it is the opinion of the Court, that for the error of the District Court, on the question of laches, the judgment ought to be reversed, and a venire facias de novo awarded, with directions, also, to allow the parties liberty to amend their pleadings.