### LEWIS PUB. CO. v. WYMAN et al.

(Circuit Court, E. D. Missouri, E. D.    April 17, 1907.)†

#### No. 5,437.

POST OFFICE (§ 15*)—ACTION OF POST OFFICE DEPARTMENT—REVIEW BY COURTS.
　　Under the settled rule that laches is not imputable to the government in its character as sovereign by those subject to its dominion, the fact that action on an application for admission of a periodical publication to the mails at the second-class rate of postage was delayed for several years by the officers of the Post Office Department, and that in the meantime the publication was admitted as second-class matter under a temporary permit issued by authority of section 282 of the Postal Regulations of 1893, to remain in force "until the Post Office Department shall determine whether it is admissible as second-class matter," does not entitle the publisher to a hearing before the department acts on his application, as in case of revocation of a privilege once granted, and the courts have no authority to review the action of the Postmaster General in refusing the application.

　　[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 15.*]

In Equity.   Suit for injunction.

Barclay & Fauntleroy and Carter, Collins & Jones, for complainant.
Chester H. Krum and H. H. Glassie, for defendants.

TRIEBER, District Judge.   The only facts which differentiate this case from No. 5,417 (152 Fed. 787) are the following:
The complainant published a magazine called "The Winner," which

was granted the second-class rate privilege. In 1902, the name of the magazine was changed to "The Woman's Magazine," since which time the said second-class postage privilege has been continuously used by and accorded to said magazine. On the 21st day of August, 1902, an application was made by the corporation at that time publishing the Winner Magazine and the Woman's Magazine for admission of said Woman's Magazine to the mails at second-class rates of postage. The rules of the department then in force provided (section 283, Postal Laws and Regulations of 1893; section 443, Postal Laws and Regulations of 1902):

"In case of a change of name or of the regular periods of issue of a publica tion already entered as second-class matter, or the removal of its office of publication to a post office other than that of original entry, the postmaster will require the publishers to apply for re-entry the same as though the publication were a new one."

The application for the Woman's Magazine was made on printed blanks furnished by the department for that purpose, and was as follows:

"St. Louis, Mo., August 21, 1902.

"Application is hereby made to have 'The Woman's Magazine,' formerly 'The Winner Magazine,' a monthly woman's magazine, published in this place, admitted to the mails at the second-class rate of postage, full particulars of it being given in the sworn answers to the subjoined interrogatories.

"Mail Order Publishing Company, Incorporated, Publisher."

Then follow the answers to the printed interrogatories.

Upon the filing of this application with the postmaster at St. Louis, he issued what is called a "temporary permit" for entry of publication at second-class rate. This temporary permit is as follows:

"Temporary Permit for Entry of Publication at Second-Class Rate.

"Post Office at St. Louis, Mo., August 21, 1902.

"Upon affidavit and other proof submitted to me and by virtue of authority conferred by section 282 of the Postal Regulations of 1903, permission is hereby given to the publishers of 'The Woman's Magazine' monthly, to mail at this office at the pound rate of postage until the Post Office Department shall determine whether it is admissible as second-class matter.

"F. W. Baumhoff, Postmaster,
"By J. P. Biedenstein."

On August 22, 1902, the postmaster of St. Louis reported to the department as follows:

"Sir: I enclose herewith a copy of 'The Woman's Magazine,' a monthly published in this city, together with an application for admission to the mails at the pound rate of postage. This publication has heretofore been entered under the name of 'The Winner Magazine' and this application is made necessary by reason of the change in name.

"I have considered it advisable to issue a temporary permit in this case pending decision of your office.

"Respectfully,                    F. W. Baumhoff, Postmaster,
"By Alex. L. Siegmund, Assistant Postmaster."

Before the receipt of this letter by the department, it had been notified of the change of name and the proposed application for its admis-

168 F.—48

sion as second-class matter, and on August 25, 1902, there was addressed the following letter to the postmaster at St. Louis:

"Sir: The Department has been informed that the name of 'The Winner Magazine' will be changed to 'The Woman's Magazine,' and an application will be made through your office for its admission as second-class matter.

"A request has been made that the deposit provided in section 441, Postal Laws and Regulations, be waived in this case. Inasmuch as 'The Winner' is entered as second-class matter, if you are satisfied that it would be perfectly proper to do so you may waive the money deposit required by section 441 of the Postal Laws and Regulations to secure payment of the third-class rate of postage upon all mailings of 'The Woman's Magazine,' pending consideration of the application for its entry as second-class matter upon the change of name from 'The Winner.'

"Respectfully yours,                                   H. B. Bacon,
                          "Acting Third Assistant Postmaster General."

On August 26, 1902, the letter of the postmaster of August 22d had reached the department, whereupon the following reply was sent:

"Postmaster, St. Louis, Missouri.

"Sir: The application for entry of 'The Woman's Magazine' as second-class matter upon change of name from 'The Winner' has been received.

"In view of the fact that 'The Winner' is no longer in existence and is superseded by the 'Home Magazine,' and further that you were given authority on the 25th instant to waive the money deposit required by section 441 of the Postal Laws and Regulations to secure payment of the third-class rate of postage upon all mailings of 'The Woman's Magazine,' pending consideration of the application for its entry as second-class matter upon change of name from 'The Winner,' you are directed to request the publisher to deliver to you the certificate of entry of 'The Winner' as second-class matter, so that it may be forwarded to the department for filing with the case of 'The Winner.'

"Very respectfully,                                    H. B. Bacon,
                          "Acting Third Assistant Postmaster General."

It is proper to state here that on April 2, 1902, before there was any change of name of the Winner Magazine, the Post Office Department had issued an order to show cause why that publication should not be denied the second-class rate of postage on the grounds set out in that notice, but no action seems to have been taken in this matter.

On October 1, 1902, the postmaster at St. Louis addressed a letter to Mr. Lewis, inclosing a copy of the letter from the Third Assistant Postmaster General requesting a return of the certificate of entry for the Winner, in which letter the postmaster refers to the fact that verbal requests for the return had been made on several occasions, and he now requests immediate attention, in order that he may send a reply to the department.

In reply to this letter, Mr. Lewis, on the same date, advised him that he was unable to find that certificate, but that he would again make careful search, and, if successful, would forward it at once. A copy of this letter was forwarded to the department by the postmaster, and on October 9th the Third Assistant Postmaster General advised the postmaster that:

"In view of the statement in your letter of the 3rd instant that the publisher of 'The Winner' is unable to find the certificate of entry of that publication as second-class matter, the department will not press its request for the surrender of that certificate."

The Woman's Magazine, in conformity with the regulations of the department, published that it was entered as second-class matter at the post office in St. Louis, giving the date when the certificate was granted to the Winner, making no mention of the temporary permit granted August 21, 1902, nor claiming any other later permit.

No final action was taken by the department on this application, and the Woman's Magazine was permitted the second-class privilege until limited by the action of the postmaster at St. Louis, as stated in No. 5,417.

On June 5, 1905, and on April 19, 1906, notices identical with those in No. 5,417 were sent to complainant. As it has been determined in the case of the Woman's Farm Journal that there was no hearing, and the facts in this case are identical, the same conclusion would naturally be reached if the second-class privilege has ever been granted for this magazine. The grounds for the claim are that the magazine was permitted to go through the mails ever since August, 1902, at second-class rates; that the temporary permit has never been revoked; that the notice on the magazine, printed in compliance with the law, showed that the privilege granted to the Winner is claimed as the authority for this magazine; that the notice sent on June 5, 1905, was that the complainant "show cause why the authorization for admission of the 'Woman's Magazine' to the second-class of mail matter, under the act of March 3, 1879, c. 180, § 10, 20 Stat. 359 (U. S. Comp. St. 1901, p. 2646), should not be revoked"; and that the letter of April 19, 1906, notifying the complainant of the day set for hearing on its appeal from the action of the postmaster in determining that the subscriptions to the Woman's Magazine did not exceed 539,901 copies, also recognized the fact that the second-class privilege had been granted; and for these reasons it is claimed that complainant possessed that privilege, and it could not be revoked without a hearing, in conformity with the act of March 3, 1901, c. 851, § 1, 31 Stat. 1107 (U. S. Comp. St. 1901, p. 2655). The action of the Postmaster General on March 4, 1907, so far as it concerns this matter, is as follows:

"In the matter of your recommendation that the department deny the pending application submitted August 22, 1902, for entry of this publication as second-class matter, you are informed that upon a hearing granted the publisher on the same dates (April 30 and May 1, 1906) and upon a careful and thorough investigation of all the evidence by the department, I find that the publication does not have a legitimate list of subscribers, that it is designed and published primarily for advertising purposes, and that it is being circulated at a nominal rate, contrary to the law and the regulation of the department. You will, therefore, refuse hereafter to accept for mailing at second-class rate of postage copies of said publication, and notify the publisher that his application for entry of 'The Woman's Magazine' as second-class matter is denied."

This was addressed to the postmaster at St. Louis.

Whatever the effect of the actions of the department officers as herein recited might be if performed by officers of private corporations, or individuals, or their agents, is immaterial, for the law is well settled that the government cannot be estopped by any unauthorized acts of its officers or their mistakes. Laches is not imputable to the government in its character as sovereign by those subject to its dominion. United States v. Kirkpatrick, 9 Wheat. 735, 6 L. Ed. 199;

Gibbons v. United States, 8 Wall. 269, 19 L. Ed. 453; Filor v. United States, 9 Wall. 45, 19 L. Ed. 549; Hart v. United States, 95 U. S. 316, 24 L. Ed. 479; Minturn v. United States, 106 U. S. 437, 1 Sup. Ct. 402, 27 L. Ed. 208; German Bank v. United States, 148 U. S. 573, 13 Sup. Ct. 702, 37 L. Ed. 564; United States v. Pine River, etc., Co., 89 Fed. 907, 32 C. C. A. 406; Woodruff v. Berry, 40 Ark. 251.

It is conclusively shown that no permit had ever been granted allowing the Woman's Magazine the second-class rate privilege, except the temporary permit, and that provides specifically that the permission is only granted "until the Post Office Department shall determine whether it is admissible as second-class matter." The only determination by the department is that made on March 4, 1907, refusing it.

As the law does not require the department to grant a hearing on that question, none was necessary, and as there is no provision of law for reviewing the action of the Postmaster General, the injunction prayed must be refused.