Municipal Court of Cincinnati.

CITY OF CINCINNATI V. GEORGE FAY.

Decided December 6, 1929.

*John D. Ellis,* city solicitor, *Harry J. Wernke,* and *Robert McIntosh,* prosecuting attorneys, for the city of Cincinnati.

*Louis Rubenstein,* for defendant.

PICHEL, J.

This comes before the court on a motion filed by the defendant before trial seeking to have an order made to suppress the use by the police and the prosecuting attorneys,

of a piece of paper which is now being held by them with the intention of offering it in evidence against the defendant. The defendant is charged with unlawfully possessing a race horse slip, a memorandum of a wager upon horse races, in violation of the Code of Ordinances of the city of Cincinnati.

A motion of this character must receive serious thought because, if it is granted, the police and prosecuting attorney are permanently enjoined from using the evidence sought to be suppressed, and the case against the accused falls. On the other hand, the court should have in mind that the Bill of Rights of the Constitution of Ohio is an express limitation on the authority of the state, and was made a part of the fundamental law, for the purpose of preventing improper methods of obtaining evidence to be used in the prosecution of citizens.

It is complained of by the prosecuting attorneys that the Constitution is used as a shield by defendants who may be guilty of offenses, and to prevent them from paying the penalty for their crime. This may be but if we are to have orderly and constitutional government, it is not for the court to determine whether or not Section 14 of Article 1 (Bill of Rights) should or should not be a part of the Constitution of the State of Ohio. It is enough that it is there, and the court, under its oath of office, is bound to uphold it. It might be more expedient, or rather, it certainly would be more expedient for the police officers of the state to be permitted to search indiscriminately, and not be bound by any constitutional limitations, but the people of this state and of the United States have determined otherwise. *Carroll* v. *U. S.,* 267 U. S., 132; *Weeks* v. *U. S.,* 232 U. S., 383.

The defendant operated a cigar store. There was no proof offered that he was maintaining a gambling place, or that the police knew before they searched him, that he had in his possession any gambling paraphernalia. When they entered his cigar store, the officers saw him chatting with several men, and after he had left them, the police seized the defendant and searched his pocket, and found

the slip, the use of which it is sought to have suppressed. They did not place him under arrest before the search was made and testified that they would not have made the arrest which followed the search unless they had found the slip. The officers had no previous knowledge of the fact that he was carrying a race horse slip, nor did they have any information that would induce an honest belief that the defendant was in the act of violating the law. They had no information whatsoever, upon which they could even premise such a belief. Therefore, they did not act *bona fide*. They may have had some suspicion, but nothing further. See *Porello* v. *State*, 121 O. S., page — (Ohio Law Bulletin & Reporter of October 28, 1929). Officers cannot be permitted to guess, and then go through a man's clothing to find memoranda. Citizens should not be forced to suffer the indignity of a search upon a mere venture. *Carroll* v. *U. S.*, 267 U. S., 132, at page 153. *Cincinnati* v. *Wagner*, 27 Nisi Prius (N. S.), p. 444.

The prosecuting attorneys insist that a race horse slip having been found upon the search, that the arrest is then justified; that the officers finding defendant in possession of a contraband article can arrest, and that the prosecuting attorney should be permitted to offer the race horse slip into evidence. If this were the case, Article 14 of Section 1, of the Constitution of Ohio, would become only a sham and a pretense. The person who would be forced to submit to a police search of his person, if nothing were found, would not, of course, be heard to complain. Only those complain who have an opportunity for a day in court when charged with an offense.

Naturally only the person upon whom some contraband article might be found, would complain that it was illegally taken from him, and he would, of course, be the only one who would seek to invoke the protection of the Bill of Rights. If this provision of the Bill of Rights is not there for the protection of an accused citizen, what then is its purpose? Does it only express a *grandiose theory* of government? As a part of the fundamental law of the state it does shield an alleged law-breaker, but the history of

this constitutional provision both in state and federal constitutions shows that that was its purpose—to hamper over-zealous officers in the prosecution of alleged offenders. In fact, Article 4 was one of the first ten amendments to the Federal Constitution, which were made a part of it in 1791, having been proposed in 1789, the Federal Constitutional Convention having been held in 1787. It can be seen therefore, that the protection of this provision was demanded by the people of the states. Federal Circuit Court Judge Booth, in *Raniele* v. *U. S.,* 34 Fed. (2d), 877, at page 880, says—"after-acquired knowledge could not legalize a search unlawful when made." His decision in that case is all the more compelling to this court because in that case there was reversed a judgment of conviction of the possession of an unregistered still used and intended to be used in the manufacture of distilled spirits.

The prosecuting attorneys urge upon the court that if this motion in this case is granted the accused cannot be put on trial, and that a law-breaker would go unwhipped of justice. This is an appeal to expediency, and is not founded upon an interpretation of the Constitution. This court stands for the enforcement of law and order and believes that such enforcement can be effected, not by setting aside provisions of the Constitution and the laws, but by following them.

There is nothing that creates greater distrust in the minds of the citizenry for the government, than for the government itself to resort to unlawful means to bring accused persons to justice. What respect can the people have for a government if it itself violates the basic law, and by irregular means, attempts to obtain evidence with the intention of using it to convict its citizens?

It is certain as the prosecuting attorneys say that criminals do escape because of this constitutional provision but that plea should be made not to the court, but to a constitutional convention, or for a change in the Bill of Rights by the people. Wrong-doers have escaped because they have invoked the protection of the constitutional inhibition against unreasonable search and seizure. This, however,

has not deterred even the Federal Supreme Court from upholding the rights of the accused. *Weeks* v. *U. S., supra; Silverthorn Lumber Co.* v. *U. S.,* 251 U. S., 385, and *Amos* v. *U. S.,* 255 U. S., 313, and see cases cited in footnote under Raniele case, *supra.*

The prosecuting attorneys inquire of the court, as to what situation they are left in, if the court grants the motion. The evidence of wrong-doing will be unavailable. The answer of the court is that the police officers must proceed in a constitutional manner. They will have the co-operation of the court in issuing warrants to seize gambling paraphernalia. They can, in addition, put a little more time and attention to the matter of ferreting out crime. In two cases which this court heard within the last two weeks, the court overruled motions to suppress the evidence, and permitted the race horse slips to be offered into evidence against the accused. In both of these cases the police clearly demonstrated that there is no need of indiscriminate search of persons to enforce laws against gambling.

Of necessity, a gambler in order to carry on his unlawful occupation, must do business with the public. In one of these cases, the two police officers ate meals on two different days in a restaurant, in which a book-maker operated. These police officers made wagers with the bookmaker, and then placed him under arrest. There was nothing particularly difficult about the matter, but it required some little thought and attention, and it accomplished the result sought. It may have not been the nice thing to do but the court cannot weigh the morality of such procedure. See comment of Chief Justice Marshall, *Rosanski* v. *State,* 106 U. S., 442, bottom of page 460.

In the second case, the police for two days watched a hotel clerk receive race horse wagers and then placed him under arrest. They did not act upon suspicion that he was violating the law, as they did in the matter of the present case, but they acted with previous knowledge that this hotel clerk was making bets. The point the court makes is that the gambling laws can be enforced in an

orderly manner and that there is no need for resort to unusual and prohibited methods in obtaining evidence. It may be that the police would have to go to some more trouble in obtaining evidence properly, but this is no answer to the demand of the Constitution.

It is certainly better that occasionally some alleged offender escape punishment, than we have a breakdown of constitutional government in these United States.

The constitutional rights of the citizen should not be frittered away because of the zeal of prosecuting officers.

Therefore the motion to suppress the introduction in evidence of this alleged racing slip will be granted, and there being no further evidence against the accused, he will be dismissed.