**HALE COUNTY, TEX., et al. v. AMERICAN INDEMNITY CO. et al.**

No. 6691.

Circuit Court of Appeals, Fifth Circuit.

Feb. 11, 1933.

C. S. Williams, of Plainview, Tex., and Chas. C. Crenshaw, of Lubbock, Tex., for appellants.

Joyce Cox and Ballinger Mills, both of Galveston, Tex., Allen Wight, L. E. Elliott, M. N. Chrestman, A. S. Rollins, Webster Atwell, Albert B. Hall, W. C. Gowan, and Neth L. Leachman, all of Dallas, Tex., and W. D. Girand, of Lubbock, Tex., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The county of Hale sued at law upon thirteen surety bonds given by Plainville National Bank as county depository, and appeals from a directed verdict and judgment discharging them all. Under the statutes of Texas, Rev. Stats. of 1925, art. 2544 et seq., and article 2547, as amended by Act Feb. 9, 1929, c. 11 (Vernon's Ann. Civ. St. art. 2547), the county depository is a bank selected every two years by the county commissioners' court of each county, after advertising for the highest bidder for interest to be allowed on average daily balances of county funds. Qualification is accomplished by giving bond signed by individual sureties or by surety companies and approved by the commissioners' court and the comptroller, or by pledging collaterals of specified kinds, in an amount not less than the total county revenue of the previous year. If bond sales or other funds cause the deposit to exceed the security taken, further surety bonds or collaterals may be demanded, to be released as the deposit is reduced. All county moneys are required to be deposited in the depository, and are to be paid out only on the treasurer's check. The school laws, article 2829, require the county depository also to receive the school funds, which are under the control of the school superintendent, and to secure them by another bond separately given for these funds. On February 16, 1929, the bid of Plainville National Bank to pay 1.90 per cent. interest on all county funds, including special road funds, for a term of two years was accepted and the bank qualified by giving surety company bonds aggregating $145,000 with a pledge of Dallas Land Bank bonds $50,000, and Liberty bonds $20,000, all of which was duly approved and recorded in the minutes of the commissioners' court. Later, when proceeds of road bonds came in, other security was taken until the total reached $366,184. On January 12, 1931, in order to match state and federal funds to build roads, what is called an "escrow fund" was set apart in the bank, consisting of county funds, one item of $172,093.06 and one of $2,383.63, to be withdrawn only on vouchers of the com-

missioners' court when approved by the state highway engineer or his agent. The orders setting apart these two funds recite as to each that it is "secured to the county by the aforesaid Depository in the sum of $366,184.00 in the following manner," listing collateral of $80,684 and surety bonds aggregating $285,500, which appear to be all the security then held by the county from its depository. On February 9, 1931, after due advertisement, the Plainville National Bank bid 2 per cent. on depository money for Hale county, Tex., and for school money of said county, but not to cover any money in said bank in the escrow funds pertaining to the highways, and an order was entered by the commissioners' court accepting the bid for the ensuing two years and directing bond to be given in five days. On February 26, 1931, a bond of $85,000 with individual sureties conditioned to keep and disburse the school funds was made. In addition security amounting to $135,000 was necessary to qualify as depository for the anticipated county revenues, outside of the escrow funds, not to mention the general balance on hand. About April 1st, as testified by the county commissioners, the bank's vice president, in reply to a request that the bank furnish security and qualify, had stated that surety bonds could not be easily gotten, and that the bank could not spare the cash to buy securities to be put up. The commissioners then proposed to withdraw the funds, but the vice president stated it would be useless, that the bank could not then pay, and the demand would only close the bank, but that he would continue to try to arrange security. The vice president denies this demand and refusal. On April 6, 1931, a bond signed by American Indemnity Company for $20,000 was tendered, but with a rider attached expressing a condition dealt with below. This bond was indorsed approved April 14, 1931, by the county judge, but was never approved by the comptroller. $23,500 in Liberty bonds were pledged later on. No further security was ever given for the county money. The county officers, however, continued to make comparatively small deposits at the bank, and to draw out funds on its checks, there being a constant diminution of the balance from a total of $417,581.31 on April 9, the date at which the bonds are said to terminate, to a total of $266,219.46 on Sept. 12th, when the bank closed and was later put in receivership. Thereafter the county, on agreements with the receiver, realized on and applied the collateral securities held by it at some loss from their face value, raising a to-

tal credit of about $78,000. It is now suing all bonds for the remainder.

■ The bond with individual sureties for $85,000 covering the school funds was held by the trial court to be security for those funds only, and not for the county funds, and was with its beneficiaries put out of the case as misjoined. The sureties on that bond were by its terms bound only for the school funds, and those on the other bonds only for the county moneys. 46 C. J., p. 1067, § 396; United States v. White, 28 Fed. Cas. page 588, No. 16,686. That bond is out of this case for all purposes.

Two of the bonds given during the first two-year term by National Surety Company and New Amsterdam Company for county funds were specially conditioned so that no liability arose upon them, and they also have been discharged without exception taken. We rule nothing touching them.

■ The bond of American Indemnity Company for $20,000 given April 6, 1931, after the bank's second appointment, was held never to have become effective because of a rider annexed to it as follows: "It is a condition to the surety's liability hereunder that the County of Hale, acting through its Commissioners Court and County Judge, shall at all times while the bond is in force keep and require from the Plainville National Bank, Depository, bonds or other security aggregating $176,000.00 in addition to the $20,000.00 named in this bond. In the event of loss of the aforesaid county funds or any part thereof within the terms of this bond the amount recoverable hereon shall be such proportion of the total loss as $20,000 bears to $196,000.00, and shall in no event exceed such proportion, nor shall it in any event exceed $20,000.00."

Under some circumstances such words might be considered a mere covenant for a limited liability rather than as fixing a condition precedent to any liability. Considering, however, that the bond was offered as only a partial qualification for a public functionary and that the statute required an aggregate security approximating that mentioned in the rider, and exceeding it if all county funds then owing were to be covered, the more reasonable construction is to give the first sentence its literal meaning that there shall be no liability unless the contemplated security is fully furnished. The commissioners' court, indeed, had no right to accept the security unconditionally until the amount required by law to qualify was furnished. Its approval

of the bond partakes of the condition stated in the rider. The comptroller never approved it. Even a parol stipulation that the surety on a public bond is not to be bound until others sign is upheld if known to the obligee. Dair v. United States, 16 Wall. 1, 21 L. Ed. 491; McFarlane v. Howell, 16 Tex. Civ. App. 246, 43 S. W. 315; Crawford v. Foster, 6 Ga. 202, 50 Am. Dec. 327; 46 C. J. § 392. The condition was never satisfied. The $85,000 school bond for the school funds cannot be counted. The escrow funds were excluded from the bank's bid for county funds, and the collateral already up to secure the escrow could not be regarded as free to be used in the new qualification. It was correctly held that there was never any liability under the $20,000 bond of April 6, 1931.

As to the remaining bonds for the 1929–30 term, several defenses are urged. The one that prevailed at the trial is that there was no breach of their condition because there was during the term which they cover ending April 9th no refusal to pay checks and no failure of the bank. The bonds are all conditioned alike. After reciting the bank's appointment as county depository for a period of two years ending sixty days after the time fixed by law for the next selection of a depository, and its agreement to pay interest monthly on deposit balances at the rate of 1.90 per cent. per annum, the stipulation is: "Now, therefore, if the above bounden principal, Plainville National Bank, shall faithfully do and *perform all the duties and obligations* devolving on it by law as the County Depository of Hale County, and shall faithfully keep *and account for* all funds belonging to the county which are deposited with it and all other funds deposited under the requirement of Chap. 11, Act of the 35th Legislature passed at its regular session, and shall pay the regular interest at the time and at the rate herein above stipulated, and shall at the expiration of the term for which it has been chosen *turn over to its successor* all the funds, property and other things of value coming into its hands as such depository, then and in that event this obligation is to be and become null and void."

The condition required by the statute in the light of which the bond is to be construed is briefer, but to the same effect, "conditioned for the faithful *performance of all the duties and obligations* devolving by law upon such depository and for the payment upon presentation of all checks drawn upon said depository by the County Treasurer of the county and that said county funds shall be faithfully kept by said depository and *accounted for* according to law." We do not think the depository accounts for the funds deposited by a mere admission on its books at the end of the term that the sum is due, coupled with an ability then to pay if demanded. The accounting meant by the statute includes payment or tender thereof, and these bonds so interpret it by expressly promising payment. If payment was not or could not be made on the last day, the duty to pay remained until performed unless some matter of discharge is shown, and the sureties remain bound therefor. It is not enough that all checks and interest shall have been paid up to April 9th, the period fixed by the bond. The obligations of the bond do not cease on that date. The sureties are not liable for deposits made thereafter, but they are bound for an account of those theretofore received. United States v. Stone, 106 U. S. 525, 1 S. Ct. 287, 27 L. Ed. 163; Bryan v. United States, 1 Black, 140, 17 L. Ed. 135; United States v. Nicholl, 12 Wheat. 505, 6 L. Ed. 709. The depository must not only pay checks and interest during the term of the bond, but must at or after its expiration account for all the money remaining as expressed by the statute, or turn it over to its successor as expressed by the bond. Thus in Smith v. United States, 170 U. S. at page 382, 18 S. Ct. 626, 630, 42 L. Ed. 1074, where the bond was to faithfully disburse and honestly to account for moneys, it was said: "There may have been no breach of the bond at the time of his removal from office, but the liability * * * to account remained, and the bond continued in force until he had fully accounted, and thus had fulfilled all the conditions of his bond." The bonds and the law here contemplate that the money deposited will be used by the bank—the payment of interest shows that. City Nat. Bank v. Eastland County (Tex. Civ. App.) 12 S.W.(2d) 662; Manhattan Co. v. Blake, 148 U. S. 424, 13 S. Ct. 640, 37 L. Ed. 504. But they contemplate also a full repayment either in the honoring of checks or in a settlement with a duly qualified successor, or, if none, with the treasurer of the county. The sureties are not discharged as to the unpaid balance at the end of the term because there had been no demand and refusal to pay. United States. F. & G. Co. v. Pensacola, 68 Fla. 357, 67 So. 87, Ann. Cas. 1916B, 1236. The depository indeed is really not a bailee as most treasurers are, but a borrower, and its obligation is not discharged until a settlement of its debt is made. Equitable Surety Co. v. Board of Finance of Jackson Township, 186

Ind. 650, 117 N. E. 860. Public depositaries who are bailees are with their sureties held to strict account and payment, not according to the law of bailments but according to the terms of their bonds and the intent of the laws requiring them. Loss by fire is no excuse, Smythe v. United States, 188 U. S. 156, 23 S. Ct. 279, 47 L. Ed. 425; nor is secret theft, United States v. Prescott, 3 How. 578, 11 L. Ed. 734; United States v. Dashiel, 4 Wall. 182, 18 L. Ed. 319; nor is robbery by violence, Boyden v. United States, 13 Wall. 17, 20 L. Ed. 527. Only the overpowering force of the public enemy in war has been upheld as a sufficient excuse for the loss of public money thus bailed. United States v. Thomas, 15 Wall. 337, 21 L. Ed. 89. We perceive no reason to abate, but rather to increase, the stringency of the obligation when, as here, the public money is not bailed but is borrowed by virtue of the bond.

It is next urged that the reappointment of the bank as its own successor operates as an account and discharges the former bonds. The statute declares, article 2549: "As soon as said bond be given and approved by the commissioners court, and the comptroller, an order shall be made and entered upon the minutes of said court designating such banking corporation, association, or individual banker, as a depository of the funds of said county until sixty days after the time fixed for the next selection of a depository," and thereupon the funds are to be transferred to the new depository. A record open to the public, including the former sureties, is thus to be afforded. The two sets of sureties resulting are to be dealt with generally as though a new person had been appointed. United States v. Irving, 1 How. 250, 11 L. Ed. 120. The new sureties become responsible for bailed funds on hand at the beginning of the new term. Bruce v. United States, 17 How. 437, 15 L. Ed. 129; United States v. Stone, 106 U. S. 525, 1 S. Ct. 287, 27 L. Ed. 163; 46 C. J., Officers, § 409. And this is held true of sureties for lawfully borrowed funds in New Liberty Common School Dist. v. Merchants' & Planters' Bank (Tex. Civ. App.) 273 S. W. 330, and Kopecky v. City of Yoakum (Tex. Com. App.) 52 S.W.(2d) 240. But here there are no new sureties and no new depository in position lawfully to receive funds and assume liabilities. The statutes plainly imply that without security there shall be no deposit. No relief accrued to the old sureties from the abortive appointment of their principal for the new term. We also overrule the contention that the bank became a de facto depository for the new term. Such a doctrine might be applied to sustain deposits and disbursements actually made in good faith, but it has no application to create a fiction of an accounting as with a successor.

Nor do we find any basis for the contention that the county officers by their conduct and by their delay to force a settlement or by their failure to notify the sureties of the bank's alleged shaky condition have released the sureties or estopped the county from holding them to account. Public officers are but agents whose authority is defined and limited by the law and therefore known to all persons dealing with them. Their acts beyond their lawful powers are ineffectual to bind the public which they represent, and their neglect and laches can seldom affect public rights. Many decisions to this effect can be found touching sureties on public bonds. That laches is in general not imputable to government, and that an omission to require a bonded agent to account at the periods fixed by law does not discharge his sureties, is held in United States v. Kirkpatrick, 9 Wheat. 720, 6 L. Ed. 199; and this though a statute required dismissal from office on failure to account, United States v. Vanzandt, 11 Wheat. 184, 6 L. Ed. 448. In Dox v. Postmaster General, 1 Pet. 318, 7 L. Ed. 160, suit was delayed five years, but again laches was held not to relieve the sureties. See, also, Minturn v. United States, 106 U. S. 437, 1 S. Ct. 402, 27 L. Ed. 208. The allowing an officer to remain in office after knowledge of his default whereby further defaults occurred does not relieve his sureties. Jones v. United States, 18 Wall. 662, 21 L. Ed. 867; 46 C. J., Officers, § 412. Making further deposits in the bank before it qualified was without authority of law. The old sureties are not bound for them in any event. Withdrawing funds on checks did not prejudice but tended to relieve the old sureties, because their debt was thereby reduced more than $150,000 by September 12th. It may be doubted if more could have been gotten by a formal demand for all made in April.

It is said that because there was no lawful successor there could be no compliance with the bonds, and that this relieves the sureties from accounting. That there was no successor was not the fault of the county or its officers. If the absence of a successor alone was preventing the sureties from seeing that an account was made on April 9th, they might have required the money due to be safely kept elsewhere, or have paid

it over to the county treasurer, and saved themselves from further risk. .

It is claimed that during the first term some of the pledged securities were released to the detriment of the sureties. The statute itself, article 2548, provides for the release of extra securities taken after the qualification when no longer needed, and this must be regarded as consented to by the sureties. Moreover, a wrongful release of securities relieves the surety only pro tanto, and does not discharge him. Taylor v. Continental Supply Co. (C. C. A.) 16 F.(2d) 578, 579; Southern Pacific Co. v. Globe Indemnity Co. (C. C. A.) 21 F.(2d) 288, 289.

The contention that the bonds were all assigned to secure the escrow funds, and no longer secure other county funds, is without merit. It would have been beyond the authority of the commissioners' court to transfer security ample for all to a part only of the county's funds, but they in fact transferred nothing. There was a mere recital in each ex parte order that the escrow funds were secured to the county by the bonds and collateral stated, as indeed were all the other county funds. The status of the bonds was in no wise affected thereby. The escrow fund was mere bookkeeping. The bank continued to owe the county as before. The same may be said of the so-called time deposit slips. No officer of the bank signed them. The commissioners' court never authorized them, if they could have done so; and the county treasurer, who alone knew of them, paid no attention to them. They prejudiced the sureties in no way. See Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242.

As to the claimed surrender of the bond for $25,000, signed by Equitable Casualty & Surety Company as surety, there is a question of fact as to whether it was redelivered by the county judge to the bank for the purpose of surrender or for some other purpose. Whether it was given as an extra bond under article 2548, and whether it was substituted by another bond as permitted by that article or just given away, is not clear. We leave open questions of the authority of the county judge to surrender it until the facts are better shown. . .

The contention that funds deposited by the tax collector are not covered we overrule. The money was county funds. Article 2549 expressly requires him to put it in the depository and expressly states "the bond of such county depository or depositories shall stand as security for all such funds," and that the tax collector's bond is relieved.

It is apparent that a verdict should not have been directed as it was, and that the exceptions to the defenses which we have condemned should have been sustained. The cause is reversed, and remanded for further proceedings not inconsistent herewith.

Reversed and remanded.